Abby *v*. Billups et al.

HARRIET ABBY *v*. THOMAS P. BILLUPS et al.

1. CORPORATION: HOW IT MAY CONTRACT WHEN NO MODE IS PRESCRIBED BY ITS CHARTER.—Where no particular mode of contracting is prescribed by the charter of a corporation, it may contract, or authorize its agent to contract, by vote, written or unwritten. Express parol contracts made by its agent, are binding on it; and promises by it, may be implied from its own acts and the acts of its agents, as if it were a natural person. Ang. & Ames on Contracts, 174.

2. SAME: CAN MAKE NO CONTRACT NOT AUTHORIZED BY ITS CHARTER.—An individual may make all contracts which are not in the eye of the law inconsistent with the welfare of society, but a corporation possesses only the powers and capacities specifically granted by the act of incorporation, and such as are necessary to carry into effect the powers expressly granted; and hence it can make only such contracts as are connected with the purpose for which it was created, and which are necessary either directly or indirectly to answer that end. 2 Kent. Com. 298; 7 How. Miss. R. 530.

3. LEASE: CONTRACT: EFFECT OF COVENANT, TO REPAIR AND RETURN LEASED PREMISES, IN SAME CONDITION AS WHEN THEY RECEIVED IT.—"A man may be excused from a duty imposed on him by law, if he be disabled from performing it, without any fault of his own; but where, by his own contract, he creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident, by inevitable necessity;" and hence, a covenant by the lessee, to keep demised premises in repair, and at the end of his term, to surrender them in as good condition as they were at the date of the lease, binds him to make good all damages to the premises from fire, although it occurred without any fault on his part.

4. CORPORATION: POWER TO LEASE, INCLUDES POWER TO COVENANT TO REPAIR.— If a corporation have the power by its charter to acquire leased property, it also has the incidental power to contract to keep the premises in repair, and to surrender them in as good condition as they were at the date of the lease, as a part of the conditions of its ownership during the term; and such contracts may as well extend to injuries arising from accident, as from natural causes; and hence it will be bound by a covenant to rebuild, in case the premises are destroyed by fire.

5. SAME: CASE IN JUDGMENT.—The Trustees of the Collegiate High School of the Independent Order of Odd Fellows, at Columbus, are authorized, by the act of incorporation, "to acquire property, either by gift, purchase, or other-wise, not exceeding in value the sum of fifty thousand dollars;" this authority extends to the acquisition of leasehold property, as well as a greater interest in realty; and they may therefore lease for a term of years, farm and buildings

for the use of the corporation; and if, in the contract of lease, they covenant to surrender the demised premises in as good condition as they were in at the commencement of their term, the corporation will be bound to rebuild, in case the buildings are destroyed by fire.

ERROR to the Circuit Court of Lowndes county. Hon. William L. Harris, judge.

*Harrison* and *Matthews*, for plaintiff in error.

The point upon which this cause was decided against the plaintiff, in the court below, was the supposed want of power, in the board of trustees, to make the contract set forth in the complaint.

On pages 375–6, Pamphlet Acts, 1852, will be found the act, incorporating this company: by which, among other things, the board of trustees are "empowered to acquire property, by gift, purchase or otherwise, not to exceed, at one time, the sum of $50,000, and to hold and convey the same in their corporate name; and also to enjoy all legal privileges commonly appertaining to such incorporations," &c. In deciding whether a corporation can make a particular contract, we are to consider in the first place, whether its charter, or some statute binding upon it, forbids or permits it, to make such a contract; and if the charter, and valid statutory law, are silent upon the subject. In the second place, whether the power to make such a contract, may not be implied upon the part of the corporation, as directly, or incidentally necessary, to enable it to fulfil the purpose of its existence; or whether the contract is entirely foreign to that purpose. Ang. & Ames on Corporations, 5th edit. 272, sect. 256; Ib. 101, sect. 111; see *Commercial Bank of Manchester* v. *Nolan et al.* 7 How. Miss. Rep. 522–530.

It is clear, that the corporation had power to purchase land, and build on it, or to purchase, with the improvements already made, for the purposes of the "Collegiate High School." So it has power to lease improved lots, for the same purpose, for any length of time, provided the lease does not exceed $50,000 in value.

This lease was a property in the premises, and gave the exclusive use, possession, and enjoyment of them, to the corporation, and falls precisely within the scope of the powers conferred by the charter.

In any view of the contract, it would not be foreign to the purposes for which the trustees were incorporated. Indeed, if the

charter were silent on the subject, there being no forbidding statute, the power here exercised would be incidentally necessary to carry out the express grants. Because, the school could not be put into operation without suitable buildings, &c.

Suppose the corporation had not the means of erecting the buildings, and could not purchase them already erected, or if it were inexpedient to do so, or it was to its interest not to build or purchase,—in either event, it had the power to make the contract in question, for the purpose of putting into operation and conducting the " Collegiate High School."

" Besides, I am not aware that a corporation, more than a natural person, may purchase and convert an article to its own use, and then object that it acted beyond its statute power." It is estopped, 3 Peters 47, 48, 50; Chitty on Cont. 332; 7 Wheat. 535. Here the corporation went into the actual possession and enjoyment of the leased premises, the board of trustees got all the benefit of their contract, by using the property for the purposes of their " High School." See 5 Hill's N. Y. Rep. 137; 7 How. Miss. Rep. 508; 4 S. & Marshall, 75; 8 Ib. 151.

Then, if the lease was in fulfilment of the purposes contemplated in the act of incorporation, the power is manifest to make the contract, both to rent, and return the premises at the expiration of the lease, as set forth in the complaint. In this particular, there is no distinction between the liability of the corporation, and a natural person, under like circumstances. For the power to make the lease, necessarily carries with it, the power to make an obligation, to deliver and return the property leased.

Few persons would rent premises for the purposes here, unless the lessee could obligate himself, or itself, to return them in good repair. It is admitted, by the pleadings, that plaintiff refused to rent the premises, unless the defendants would contract to return them in good repair.

The next point is, whether the contract, to return in good repair, makes the trustees liable for the destruction of the building by fire,— the result of accident.

The authorities are conclusive on this matter. 1 Parson on Cont. 425; 6 Mass. Rep. 63; 16 Ib. 238; 4 Har. & John. 564; 4 Dane's Abridgment, 375; 6 D. & E. 488, 650; Story on Cont. 383; Chitty

on Cont. 336; 21 Pick. 417, 430, 431, 441; 19 Ib. 275; 5 Porter Rep. 322, 318; 7 Ib. 42; 4 Ib. 170.

In the last place, the second count in the complaint describes fully the facts, upon which the plaintiff relies.

It will be seen, that Lee consented to the contract with the corporation by the plaintiff, before the expiration of his lease. This was a surrender of his lease. Chitty on Contracts, 330, 329; *Hamilton* v. *Stead*, 5 B. & C. 478; Story on Contracts, 647.

Furthermore, it is well settled, as a general rule, if one person make a promise to another, for the benefit of a third person, although no consideration move from such third person, it is binding, and either the party to whom it is made, or the party for whose benefit it is made, may maintain an action on it. Story on Cont. p. 82, sect. 130; Doug. Rep. 146; Hammond on Parties, 79; 17 Mass. 579, 404; 3 Pick. 92; 8 John. 58; 13 Ib. 497; 1 Chitty Plead. 5; Chitty on Cont. 52, 53, notes 1 and 2, and case cited.

But there was a valuable consideration in this case passing from plaintiff to defendant, as shown by the complaint. In conclusion, we submit that the defendants are liable as charged, or there has been a huge fraud practised upon the plaintiff. The widow's house has been burned while in the possession of this benevolent incorporation, under a contract for their benefit, with an obligation on their part to return it in good repair. They have not performed the contract, and the widow is injured by their failure.

*J. T. Harrison* and *C. R. Crusoe*, for defendants in error.

An act of the legislature was passed on the 25th February, A.D. 1852, entitled "An Act incorporating a Board of Trustees for the Collegiate High School of the Independent Order of Odd Fellows, in Columbus." Acts 1852, pp. 375, 376.

The act declares "that Covenant Lodge, No. 20, and McKindree Lodge, No. 32, of the Independent Order of Odd Fellows, under jurisdiction of the Grand Lodge of the State of Mississippi, have established a Collegiate High School in the city of Columbus, and desire an act of incorporation; therefore,

"Section 1. Be it enacted, That Samuel B. Malone, John W. Peters, Joseph B. Cobb, Richard D. Powell, Isaac M. Knapp, Oliver H. Grinnell, A. E. Love, and Harrison Hale, and their suc-

cessors in office, be, and the same are hereby declared incorporated as a board of trustees for said Collegiate High School, in the city of Columbus.

"Sec. 2. Be it further enacted, That the said board of trustees and their successors in office as above incorporated, be and the same are hereby empowered to acquire property, either by gift, purchase, or otherwise, not exceeding in value, at any one time, the sum of fifty thousand dollars, to hold and convey the same in their coporate name; to sue and be sued, plead and be impleaded, in any of the courts of this State ; to adopt such by-laws and regulations for the government of said Collegiate High School, as may by the said Board of Trustees be deemed expedient, and to enjoy all legal privileges commonly appertaining to such incorporations, not contrary to the Constitution and laws of this State.

"Sec. 3. Act to take effect from and after its passage."

The defendants were sued as such board of trustees, incorporated as above, on an alleged contract for a breach of a covenant in a lease of a house and lot, viz., to return the house and lot and premises to the plaintiff, at the expiration of the term, in as good condition and repair as they were when defendants received possession of the same ; it being alleged that the house was burned and consumed by fire during the term.

The complaint was demurred to and the demurrer sustained. Plaintiff refused to amend, and sues out this writ of error.

We contend that the complaint itself shows that said board of trustees of the Collegiate High School were not " empowered" to make any such contract, or authorized to enter into any such covenant. We insist that they were not " empowered" to become insurers against fire, wind or water, lightning, tempest, the acts of God, or of the public enemies. They were, by the charter, created a mere board of trustees, with the right of succession, with powers *sub modo,* and for a few specified purposes only. They were mere trustees and agents, managers appointed by the charter who derive all their authority from the act of the incorporation. They are agents of the High School established by the Independent Order of Odd Fellows, only so far as authorized directly or impliedly by the charter. They were incorporated only as a board of trustees, and for a school already established. The Covenant

Lodge, No. 20, and the McKindree Lodge, No. 32, in conjunction, established the school, both corporations then in existence. These lodges are the owners and proprietors of the school, but, as they were separate and independent bodies, under the jurisdiction of the Grand Lodge of the State of Mississippi, it became advisable to have one set of managers and trustees, who could represent both lodges as a board of trustees. Hence, certain members were chosen out of the two lodges who were incorporated " as a board of trustees for said Collegiate High School in the city of Columbus." And it was enacted that said board of trustees, and their successors in office as above incorporated, be and they are hereby empowered to acquire property, either by gift, purchase, or otherwise, not exceeding in value, at any one time, the sum of fifty thousand dollars, to hold and convey the same in their corporate name; to sue and be sued, plead and be impleaded; to pass by-laws for the government of said school, and to enjoy all legal privileges commonly appertaining to such incorporations.

A privilege is an exemption from some duty, burden, or attendance; it is an immunity, an indulgence; certainly it never confers a power or authority. In the above act it is used in contradistinction to the word " empowered." See 3 Tomlin's Law Dict. 219. And what were said board of trustees " empowered" to do? To " acquire property" not exceeding in value, at any one time, fifty thousand dollars, and to hold and convey the same; to sue and be sued, plead and be impleaded; and to pass by-laws for the government of said High School." This makes up the whole power delegated. And even the privileges of the trustees were confined and limited to such as commonly appertain to such incorporations.

This suit is upon an express contract, upon an alleged agreement, the legal effect of which is to insure against fire, tempests, and the like.

If a statute prescribe the mode in which corporations must contract, a contract made in any other mode will not be binding upon the corporation, or the party contracting with it. Angell and Ames on Corporations, § 252 (a), last ed.

The directors of a corporation, especially empowered by the charter to contract on its behalf, have no power to appoint sub-agents to contract for the corporation, unless such power is ex-

pressly given them; and, accordingly, contracts made by such sub-agents will not be binding on the corporation. Angell and Ames on Corps. §§ 277, 279; *Lyon* v. *Jerome*, 26 Wendell R. 485; *Tippets* v. *Walker et al.* 4 Mass. R. 595; *Commissioners* v. *Bank of Buffalo*, 6 Paige, Ch. R. 497. Boards of directors, managers, &c., are agents of the corporation only so far as authorized directly or impliedly by the charter. Angell and Ames, § 280.

The act of incorporation is an enabling act; it gives the body corporate all the power it possesses : it enables it to contract, and when it prescribes the mode of contracting, that mode must be observed, or the instrument no more creates a contract than if the body never had been incorporated. Persons dealing with a company of this sort, should always bear in mind that a corporation is a body essentially different from an ordinary partnership or firm, for all purposes of contract, &c. Ib. § 291; 1 United States Digest, 590, and cases cited; 12 Mass. R. 297; 2 Cranch, 127; 4 Wheaton, 636; *N. Y. Fireman and Insurance Co.* v. *Ely*, 2 Cowen, 678; 4 Peters, 152; 1 Stewart, 299; 2 Johns. R. 109; 15 Johns. 358; 6 Wheaton, 597; 5 Conn. R. 560; 5 Ib. 574.

Where a company was incorporated " for the purpose of establishing and conducting a line or lines of steamboats, vessels, and stages, or other carriages, for the conveyance of passengers between certain places, a contract by such a company, for the breaking ice and towing of vessels through the track broken, to another place, is invalid, and cannot be enforced against them." *The Pennsylvania, &c. Co.* v. *Dandridge*, 8 Gill & Johns. 248; Angell & Ames, § 256.

Nor is a corporation in such case, where an action is brought against them on contract, estopped, by the consideration they have received, from denying their competency to make the contract; for if so, the estoppel would apply equally to the other contracting party, and the limitation upon the power of the corporation would be of no avail. Angell & Ames on Corporations, § 256; *Albert* v. *Savings Bank*, 1 Maryland, Ch. Dec. 407; *The Ohio Life Insurance and Trust Company* v. *The Merchants' Insurance and Trust Company*, 11 Humph. Rep. 1; and see late English cases collected in Angell & Ames, 271, § 256 (note 1).

Corporations can make no contracts which are not necessary,

either directly, or indirectly, to effect the objects of their creation, and a corporation itself may, in an action brought against it, on such contract, deny its power to enter into it. *Abbott* v. *Balt. and Rapp. Steam Packet Company*, 1 Maryland Ch. Decisions, 542; 12 United States Digest, 132, §§ 26, 28.

And a contract cannot be ratified, which is illegal; and one of the contracting parties had no power to make. *Harrison and others* v. *McHenry*, 9 Georgia Rep. 164.

It takes two parties to make a contract; and unless both parties are able to contract, in the very nature of things, there can be no contract.

In the present case, the lodges of Odd Fellows had no power to make such a covenant or agreement of insurance as that sued, nor had their agents, the board of trustees. And see *Cammeyer* v. *United German Lutheran Churches*, 2 Sandf. Ch. Rep. 221.

This is not a case of a tenant disputing his landlord's title; but we deny the power of one of the contracting parties to enter into such a contract; and the authority of the board of trustees of the Collegiate High School to bind the Odd Fellows in manner and form as stated. We deny that the lodges are insurance offices. We deny further, the authority of said board of trustees to enter into any contract of leasing, and say they had no right to rent the premises in question. The institution had, previous to the charter, been "established" by the two lodges, and was their property. Said trustees had no authority to change the location, or rent other premises, in which said Collegiate High School was to be conducted.

Two or more corporations cannot consolidate their funds, or enter into a copartnership, unless authorized by express grant, or necessary implication. Angell & Ames, § 272.

Therefore, the above named lodges, which were already incorporated as Independent Odd Fellows, established a High School, and procured the sanction of the legislature, and the appointment of a board of trustees, with perpetual succession, as such. These trustees were to acquire property, by gift, purchase, or otherwise, and to hold and convey the same; but not rent houses, and insure them against fire. Where does the insurance money come from to pay the judgment, if the plaintiff should obtain one?

And these trustees were given only certain limited, specified powers, and *expressio unius exclusio alterius.*

A corporation can exercise no power over the property it holds, except that with which the charter expressly or impliedly clothed it. Angell & Ames, § 160.

The authority of the board of trustees is subjected to a strict construction. Smith's Com. Stat. and Const. Law, § 738; 2 Cowen, 419; Story on Agency, § 68.

An authority to acquire property by gift, purchase, or otherwise, not to exceed a certain sum in value, and to hold and convey the same, surely delegates no power to rent a house and lot, and insure the premises against fire.

A power of attorney to sell, assign, and transfer stock, will not include a power to pledge them for the agent's own debt, or a power to bargain and sell land, will not include an authority to grant a license to the purchaser, previous to a conveyance, to enter and cut timber on the land, though done *bona fide,* with a view to effect a sale. Story on Agency, § 68; 12 Ala. Rep. 257.

So where a person was appointed agent to superintend a farm, he was held to possess no power to sell it. Story on Agency, § 71.

And an authority to an agent to sell goods, does not authorize him to exchange them in barter, or to pledge them. An authority to sell stock does not authorize a sale on credit. Ib. § 74.

A special authority conferred on an agent, in the management of a plantation and the interests connected with it, to demand, and sue for all moneys, &c., subjecting "myself to be sued through him, in the same manner as if I was personally present," does not give the agent power to execute a note in the name of the principal. *Scarborough* v. *Reynolds,* 12 Alabama Rep. 252.

General language, when used in connection with a particular sub-ject-matter, will be presumed to be used in subordination to that matter, and construed and limited accordingly. 12 Ib. 257; 8 Wendell, 494.

Authority to an agent " to settle," does not authorize him to submit to arbitration the matters in dispute. *Huber* v. *Zimmerman,* 21 Ala. Rep. 488.

So a power of attorney to an agent, in charge of the plantation of his principal, " to act for him in all cases whatever, and to do

all which he might do himself," will not confer on the agent, the authority to sell the slaves of his principal. *Dearing* v. *Lightfoot*, 16 Ala. Rep. 28; *Rossiter* v. *Rossiter*, 8 Wendell, 494; *Hefferman* v. *Adams*, 7 Watts's Rep. 716; *Wood* v. *McCain*, 7 Ala. 800; *Wallace* v. *Branch Bank of Mobile*, 1 Ala. Rep. 565; *Hewes* v. *Doddrige*, 1 Robinson's Rep. 143; *Smith* v. *Gibson*, 6 Blackf. Rep. 369.

A simple authority to sell, will not authorize a sale at auction. *Towle* v. *Leavitt*, 3 Foster (N. H.) 360.

And an authority to sell at auction will not support a private sale, although more be thus obtained, than the agent was limited to, in case of an auction sale. *Daniel* v. *Adams*, Amb. 495; 1 Parsons on Contracts, 51 (note g).

In the present case, the board of trustees were mere agents created under a charter from the legislature, for the Collegiate High School, established by the two lodges of the Independent Order of Odd Fellows, with specified and limited powers. They were not " empowered " to do anything, except what was delegated by the charter, nor could the lodges ratify, or confirm, or delegate, outside or beyond the powers and authority given by the act of incorporation. The charter was the law of the existence of the agency, and gave the trustees all the power they could possess. There was a want of authority to make the contract sought to be enforced, both in the board of trustees, and the lodges of the Odd Fellows.

But there is no allegation in the declaration, that the Covenant Lodge, No. 20, and McKindree Lodge, No. 32, of the Independent Order of Odd Fellows, ever adopted, ratified, or confirmed such a contract, or that they ever heard of the same, or that they ever used or possessed said premises. The complaint is, that these agents, the board of trustees, made the contract, used and possessed the premises, and that the house was burnt down in the possession of the agents during the term of leasing to them; therefore, it is said, a right of action has accrued, not against the trustees individually, but as the incorporated and chartered agents of the above-named lodges. And thus the property of the lodges is to be taken and sold in a proceeding to which they are not made parties, in a

suit upon an illegal and unauthorized contract made by a board of trustees.

And that corporations cannot exceed the powers given in their charters in making contracts, and that they are not estopped from setting up their own want of authority to make such contracts, see further, *Governor & Company of Copper Miners* v. *Fox*, 3 E. L. & E. 420 ; *Hood* v. *New York and New Haven Railroad Company*, 22 Conn. R. 502 ; 1 Parsons on Contracts, 120.

And even if the trustees were authorized to rent the premises in question, and did go into possession, yet it would by no means follow as a necessary consequence, that they could add to the contract of renting, a covenant of insurance against fire, or that their possession would create an estoppel when sued on such covenant.

The lease was in parol for two months, and seems to have been (if the declaration is true in point of fact, which we will controvert, if it ever becomes necessary) a mere temporary arrangement made by the trustees, and outside of the established school, as well as of their powers.

SMITH, C. J., delivered the opinion of the court.

This suit was brought in the Circuit Court of Lowndes, by Harriet Abby against Thomas C. Billups et al., who are described as the Board of Trustees of the Collegiate High School of the Independent Order of Fellows, in the city of Columbus, and alleged to be a corporation by the law of this State.

The complaint alleged, that as such board of trustees, the defendants, on or about the 1st of October, 1855, in the county of Lowndes, rented from the plaintiff the house, lot, and premises of which the plaintiff was then and there the owner; which said lot and premises were situated in the town of Columbus; for the sole purpose of conducting and carrying on the said Collegiate High School, upon the express contract, that the defendants, as such trustees and corporation, in consideration that the plaintiff would lease and rent to them her said house, lot, and premises, for the period of two months, commencing from the 1st of October, 1855, for the purpose of conducting and carrying on the said Collegiate High School, the defendants agreed to pay plaintiff the sum of twenty-five dollars per month; and, at the expiration of the lease, return the

said house, lot, and premises in as good condition and repair as they were when the defendants should receive possession of the same. That the defendants received and entered into the possession, use, and occupation of the house, &c., at the time stipulated. That said house, &c., were in good repair when defendants received possession of the same, and that defendants used and enjoyed them in that condition for the purpose of conducting said Collegiate High School, until within a short time of the expiration of the said lease, when the said house was consumed by fire. And further, that defendants have not delivered the said house, lot, &c., in as good condition and repair as they were in when possession was delivered to them; but have refused to rebuild the said house, or otherwise to perform the stipulations of the said contract. A second count sets out, substantially, but with some variation in the statement, the same cause of action. And the damages are laid at four thousand dollars.

A demurrer to the complaint was interposed, which raises the question of the authority of the defendants, as trustees of the Collegiate High School, to contract in the mode and upon the terms alleged. The demurrer was sustained; and, the plaintiff declining to amend, judgment final was entered for the defendants. The cause, hence comes into this court.

In considering the propriety of the judgment, it is of course necessary to examine the act of incorporation under which, as it is alleged, the defendants proceeded in making the contract declared on.

It appears, from the preamble to the act of incorporation, that Covenant Lodge, No. 20, and McKindree Lodge, No. 32, of the Independent Order of Odd Fellows, in Columbus, had united, for the purpose of establishing a seminary of learning in that city, and being desirous of placing it under the control of a permanent board of visitors, applied to the legislature for an act to incorporate the persons named in the first section of the act, and their successors in office, who should, as the joint and permanent agent of the two lodges, take the government of the school, with corporate powers sufficient to carry into effect their objects. Accordingly, by the first section of the act, those persons and their successors in office, were incorporated as a board of trustees for the Collegiate High School, in the city of Columbus.

By the second section of the act of incorporation, the said board of trustees, and their successors in office, were "empowered to acquire property, either by gift, purchase, or otherwise, not exceeding in value at any one time the sum of fifty thousand dollars, to hold and convey the same in their corporate name, to sue and be sued, &c., and to enjoy all legal privileges commonly appertaining to such incorporations, not contrary to the Constitution and laws of this State."

In general, a corporation is restricted to the mode of contracting prescribed by the charter. But where no particular mode is prescribed by the act of incorporation, it is well settled in this country, " that the acts of a corporation, evidenced by vote,—written or unwritten,—are as completely binding upon it, and are as complete authority to its agents, as the most solemn acts done under the corporate seal; that it may as well be bound by express promises through its authorized agents, as by deed; and that promises may as well be implied from its acts, and the acts of its agents, as if it had.been an individual." (Cases cited at p. 174, An. & Ames on Corp.) Here the charter contains no direction in regard to the mode in which the board of trustees shall contract. Hence there is no doubt that the alleged contract, the execution of which is admitted by the demurrer, is obligatory upon the defendants in error, if the board of trustees had authority under the charter, to enter into it. We will, therefore, proceed to consider this question.

In this country, there is no diversity of opinion as to rules to be applied in determining the powers and capacities of a corporation. A corporation is an artificial being, created by law for specified purposes. It stands, therefore, on a very different footing from a natural person. There is this distinction, it is said, between an individual and a corporation : " An individual may perform all acts, and make all contracts, which are not in the eye of the law inconsistent with the welfare of society; a corporation possesses only the powers and capacities which are specifically granted by the act of incorporation, and such as are necessary to carry into effect the powers expressly granted. And hence, it can make only such contracts as are connected with the purpose for which it was created, and which are necessary, either directly or incidentally, to answer that end." 2 Kent. Com. 298; 7 How. Miss. R. 530.

The application of these principles in determining the extent of the powers conferred by the act of incorporation, upon the board of trustees, leaves not the slightest doubt that they were vested with authority to acquire leasehold property in lands and houses, which was useful or necessary for the purposes of the school. A lease for years is a bargain and sale of the demised premises for the time. And here the rent agreed on, was in effect the price or purchase-money to be paid for the ownership of the premises during the continuance of the lease. An estate in lands for years or for life, is clearly as much property as an estate in fee-simple. The proposition is therefore too clear for debate, that the power vested in the board of trustees, " to acquire property, by gift, purchase, or otherwise," as fully authorized them to acquire an interest in lands and houses for a term or for life, as to become the owner of the same in fee.

Indeed, we do not understand counsel as seriously contesting the authority of the board of trustees to take a lease of lands and houses; but to deny their power, under the charter, to enter into any covenant which would render the corporation responsible for injuries to the demised premises, resulting from fire, or other unforeseen and unavoidable accident. In other words, that the corporation was incapable of becoming an insurer against fire.

The question, whether a lessee, who contracts to keep the demised premises in repair, and, at the determination of the lease, to surrender them in as good condition as they were in at the date of the lease, in the event of the destruction of the buildings by fire during the term, without his default, would be bound to rebuild them, has never been decided in this court. Under these circumstances, that the tenant would be bound to rebuild, is the ancient and well-settled doctrine of the English courts. The case of *Walton* v. *Waterhouse*, 2 Saun. Rep. 422, and the cases cited in note (2) to that case, contain all the English law on the subject; the principle extracted from which is, " that, although a man may be excused from a duty imposed upon him by the law, if he is disabled from performing it without any fault of his own, yet, when by his own contract, he creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity."

The same doctrine is generally recognized in this country. Story on Con. 383; 4 Harris & John. 564; 1 Parsons on Con. 425; 7 Porter, 42; *Phillip* v. *Stevens*, 16 Mass. R. 238. And we are satisfied that the doctrine is a correct one.

Such being the proper construction and legal effect of a covenant by the lessee, to keep the demised premises in repair, and, at the determination of the lease, to surrender them in as good condition as they were in when the lease was made, we will proceed to ascertain whether the act of incorporation vested in the board of trustees, the power and capacity to enter into a covenant of that character.

If the question were, simply, whether the board of trustees, in virtue of the powers conferred by the charter, have or have not the authority to enter into policies of insurance against loss by fire, or by other casualties, where the consideration of the contract, and the object of the insurer, is a stipulated premium, no possible doubt could exist on the subject. The business of insurance is entirely foreign to the objects of the incorporation. Manifestly, the authority to make such contracts, is not expressly granted; and it cannot be conceived how its exercise is necessary to carry into effect the express powers.

But there is an essential and manifest distinction between a policy of insurance, in the legal sense of the term, and the contract declared on. In the latter, the sole object of the trustees was the acquisition of property, needful in effectuating the purposes for which the charter was granted. There was no stipulated premium, and a profit in that shape, manifestly, was not in the contemplation of the parties. It must be supposed that the trustees understood the legal operation of the contract; and hence, their liability to repair injuries to the leased premises, occasioned by inevitable accident, as well as those which would result from the decay of the buildings, or other natural causes, constituted part of the consideration for their ownership of the property, during the continuance of the lease. It is not to be controverted, that the trustees were capable of binding the corporation, to make good any deterioration in the premises, which would result from natural or known causes; and, therefore, it is not easy to perceive why they were not, also, capable of obliging the corporation to make good injuries occa-

sioned by accidental causes. Indeed, it seems impossible, in contracts of this character, to draw a distinction between the power requisite to make a valid contract to repair anticipated or inevitable injuries, and a contract to make good injuries resulting from accident. In the very nature of things, there can be no distinction between the power requisite to make a valid contract, in the one or the other. It is only by looking at the subject-matter of the contract, and not at the capacity to contract, that any misapprehension could arise.

It follows, from this view of the subject, that the board of trustees of the Collegiate High School, in making the alleged contract, acted within the limits of their chartered powers; hence, that the demurrer to the complaint was improperly sustained. We, therefore, reverse the judgment, and remand the cause, with leave to the defendants in error to answer the complaint in the court below.

Harris, J., presided on the trial below, and gave no opinion here.