SUPREME COURT

[James v. Conecuh County.]

# James *v.* Conecuh County.

*Action by County on Bond of Bridge Contractor.*

1. *When action lies; information or complaint of freeholder.*—When a bridge has been erected under contract with the county commissioners, and bond taken from the builder conditioned to keep it in good repair for five years (Code, §§ 1692–93), that court may notify and require the builder to repair it, and, in the event of his refusal or neglect to do so, maintain an action on the bond, in the name of the county, without previous information or complaint by a freeholder of the county.

2. *Measure of damages, in action on statutory bond of bridge contractor.* In an action brought in the name of the county, on the statutory bond given by a bridge contractor (Code, §§ 1692–93), the measure of damages would be the reasonable cost of making the repairs necessary to insure the safe condition of the bridge during the period covered by the bond; and if the county has already made the repairs, on default of the contractor after notice, the amount paid, though not conclusive, is a circumstance to be considered by the jury in estimating the value of the necessary repairs.

APPEAL from the Circuit Court of Conecuh.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought in the name of Conecuh County, against C. S. James, S. E. James, and J. P. Howard ; was commenced on the 14th May, 1884, and was founded on a penal bond executed by said defendants, payable to the plaintiff, which was dated February 23d, 1880, and conditioned as follows : " Whereas the said C. S. James did, on the 6th day of December, 1879, contract to build, and did build, for the use of Conecuh county, a bridge across Murder Creek, known as the Perryman bridge, which was received by the committee appointed for that purpose, for the sum of $75 ; now, if the said C. S. James shall keep [said bridge] in good repair for the safe passage of travellers and others passing over said bridge, for five years from the date of its reception, which is February 18th, 1880, the above obligation to be void," etc. The complaint set out the bond in full, and alleged, as breaches of the condition : (1.) That said bridge, during the year 1883, became out of repair, and dangerous to the travelling public and others; that said C. S. James was duly notified, by the court of County Commissioners of said county, to repair said bridge, but failed to do so ; to plaintiff's damage, $150. (2.) That the timbers in said bridge were, during the year 1883, decayed to such an extent as to make it unsafe for travellers and others to pass

over said bridge; that said C. S. James was duly notified by said court to repair said bridge, but failed to do so; and that said court had to expend a large sum of money to repair said bridge, and to employ counsel to bring this suit; to plaintiff's damage, $150. The cause was tried on issue joined, but the record does not show what pleas were filed.

On the trial, as the bill of exceptions states, the plaintiff's evidence " tended to show that the bridge was built, and was received by the county, and was used as a public bridge until about September, 1883, at which time the Commissioners Court ordered notice served on said C. S. James as to its condition, and that suit would be brought on his bond, under the statute, unless he repaired and put said bridge in safe condition; which notice was given, and no point was raised as to the regularity of said order or said notice. The proof tended to show that the bridge was in an unsafe and dangerous condition, both before and after the giving of said notice; that said C. S. James afterwards made some temporary repairs, but did not put the bridge in good repair, and it was soon in an unsafe condition, and so remained until repaired by the judge of probate, under authority from the County Commissioners; that the amount expended by the county in making these repairs was $85, and the bridge was then left in a very substantial condition, and would probably remain good for four or five years. As originally built, the bridge contained a span in the center about thirty feet in length, which, on account of its length, caused the bridge to shake when vehicles were passing over it; and this was one of the causes of complaint against the safety of the bridge. When the bridge was repaired, a new arch was erected under the center of this span; but the court instructed the jury, that they must not estimate any damages on account of putting in said arch—that it was not the duty of the defendant to put such arch in the bridge. P. D. Bowles, a witness in the case, while testifying as to the cost of the repairs and the condition of the bridge, was asked by the defendants, on cross-examination, these questions: 'What do you say would have been the smallest reasonable value necessary to have put the bridge in good repair, and kept it in that condition until the 18th February, 1885?' 'What would be the reasonable value necessary to have put the bridge in good repair, and kept it in that condition until the 18th February, 1885?' To each of these questions the plaintiff objected, and the court sustained the objections; to which rulings the defendants excepted. There was evidence showing the reasonable and necessary expense to put the bridge in good repair, and that it was out of repair a long time before the said notice was

20

[James v. Conecuh County.]

given to the said C. S. James." This was, substantially, all the evidence in the case.

"The defendants requested, among other charges in writing, the following : 'If the proof fails to show that the unsafe condition of the bridge was made known to the Commissioners Court by some freeholder of the county, then the plaintiff can not recover; for, unless this was done, said court had no right to make the order requiring notice to be given, and ordering suit to be brought on the bond.' The court refused this charge, and the defendants excepted to its refusal."

The several rulings to which exceptions were reserved, as above stated, are now assigned as error.

W. L. BRAGG, for the appellants.
STALLWORTH & BURNETT, contra.

CLOPTON, J.—The action is brought on a bond conditioned to keep a bridge, erected by contract with the County Commissioners, in good repair for the safe passage of travellers and others for a period of five years from February 18th, 1880. The defendants insist, that unless the unsafe condition of the bridge is made known to the court of County Commissioners by a freeholder of the county, as provided by section 1693 of the Code, that court is without authority to notify the contractor to repair it, and to order suit on the bond in case of his refusal or neglect to do so in a reasonable time ; in other words, that such information by a freeholder is preliminary and requisite to the right of the county to maintain suit on the bond for a breach thereof.

Every county, established in this State, is a body corporate, with power to sue and be sued in any court of record. Code, § 815. It is true, the county is a political, or civil division of the State, created as a local governmental institution, for the benefit of the people within its territorial limits. The purposes of its corporate existence are public only ; and it is clothed with corporate capacity to enable the more effectual accomplishment of these purposes. While the authority and duty to construct necessary bridges are governmental in their character, the means by which the power may be exercised, and the duty performed, may relate to the corporate character of the county. The County Commissioners are authorized to erect bridges by contract, and to take a guaranty, by bond or otherwise, that such bridges shall continue safe for the passage of travellers and other persons for a stipulated time. The power to erect is governmental ; but the authority to make contracts, as the means and mode of erecting, is corporate.

[James v. Conecuh County.]

General power to sue, and special power to make contracts for specified purposes, confer authority and capacity, in the absence of statutory limitations or restrictions applicable generally, or to the particular case, to bring and maintain any appropriate action to recover damages for the breach of a contract, which the county is authorized to make; otherwise, it would be powerless to enforce its contracts. The County Commissioners, exercising the legislative and executive powers of the county, are authorized to order such suit to be brought, and to employ counsel for the purpose.—*Jack v. Moore*, 66 Ala. 184. The question results, does section 1693 impose upon the right and authority of the court of County Commissioners to order suit on the bond of a contractor to erect a bridge, as a limitation or restriction, antecedent information of its damaged condition by a freeholder of the county? When a bridge is erected by contract, and a guaranty taken, any person injured during the period covered by the guaranty may bring suit in his own name on the bond, and the county is exempt from suit and liability; but, after the expiration of the stipulated time, the county may be sued, and damages recovered, by any person sustaining injury by reason of the defective condition of the bridge.—Code, § 1692; *Barbour County v. Horn*, 41 Ala. 114. The purposes of the bond are two-fold—redress to any person injured during the stipulated period, and protection to the county, at its expiration, against the burden and expense of immediately repairing the bridge in order to avoid the statutory liability. The obligation is to keep the bridge in such repair that it shall *continue* safe for the passage of travellers and other persons during the stipulated time. The condition of the bond is broken, whenever the bridge is suffered to remain unsafe for an unreasonable time. There can be no rational implication, that it was intended by the statute to exempt the contractor from liability to suit, unless some person was damaged, or some freeholder of the county saw proper to make complaint to the court of County Commissioners. Upon the County Commissioners is devolved the duty to provide for keeping the necessary bridges in repair; and to enable them to perform this duty, when a bridge is erected by contract, and a guaranty taken, suit on the guaranty may become requisite. The duty is public, and involves the interests of all the people, whether or not freeholders.. Unless so declared, expressly or by necessary implication, its performance should not, by construction, be made dependent upon the voluntary action of any member of any class of the people. Section 1693 provides for the case of a bridge washed away, or so damaged as to become unsafe to the public; and in such case, on the fact being made known by a freeholder of the county, the imperative duty of the

[Pratt Coal and Iron Co. v. Davis & Davis.]

court of County Commissioners arises, to notify the contractor, and, on his refusal or neglect to rebuild or repair in a reasonable time, as the case may be, to order suit on the bond. The statute is enabling in its nature and operation, clothing any freeholder of the county with power to demand the rebuilding or repair of the bridge, or the alternative, a suit on the bond. It was not designed, and does not limit or qualify the general right and authority of the county to sue on the bond, if there is a breach of its condition, and to recover such damages as the county may have sustained.

The measure of damages is the value of such repairs, as a complete performance of the condition of the bond may reasonably require—such amount as may be required to put the bridge in good repair, and to continue safe for the passage of travellers and other persons during the stipulated time; not measured with mathematical accuracy, but ascertained with reasonable certainty. The county may repair in the same manner substantially as the contractor was obligated to do, if he had undertaken to perform his contract. Two purposes are to be considered; the bridge must be put in good repair, and in a state to continue safe during the stipulated time. Whatever materials and work are essential to the accomplishment of both these purposes is authorized, though the consequence may be that the bridge will continue safe after the expiration of the agreed period. The amount which the repairs may cost the county is not the measure of damages, though it may be a circumstance properly considered by the jury in estimating the value of such repairs. The witness, Bowles, having been examined by the plaintiff as to the cost of the repairs and the condition of the bridge, it was permissible for the defendants to inquire of him, on *cross-examination*, the reasonable value of putting it in good repair, and of keeping it in that condition until the expiration of the contract time. For the error in excluding this question, the judgment must be reversed.

Reversed and remanded.