# Meriwether *v.* Lowndes County.

*Action by County, on Bond of Bridge Contractor.*

1. *Bond for keeping bridge in repair; liability to rebuild, if washed away.*—A bond given to the county by the builder of a public bridge, conditioned that it shall be "kept in good repair," and "shall remain safe for the passage of travellers and other persons continuously for the

[Meriwether v. Lowndes County.]

period of five years" (Code, §§ 1456-57), binds him to rebuild the bridge, if it is washed away by a flood during that period, though the flood was of unusual and unprecedented magnitude and extent.

2. *Same; information or complaint by freeholder.*—The statute requires the County Commissioners to notify the contractor that the bridge has become unsafe, or has been washed away, when the fact is made known to them by a freeholder of the county, and to bring suit in the name of the county on his failure or refusal to repair or rebuild; but such information or complaint by a freeholder is not a condition precedent to the right of the commissioners to give notice and bring suit.

3. *Same; materials furnished by county.*—The bridge consisting of a single span, with approaches at each end, the fact that the county furnished the materials for the span, and paid the contractor a specified sum for superintending its erection, is not available as a partial defense to the action on the bond.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. JOHN MOORE.

This action was brought in the name of Lowndes County, against Mrs. R. L. Meriwether, as the administratrix of the estate of her deceased husband, J. N. Meriwether; and was founded on a bond which he had executed on the 12th April, 1887, with two sureties (who were not sued), conditioned as follows: "Whereas said J. N. Meriwether hereby agrees, for the consideration hereinafter named, to be paid by said county, to build, and for five years to keep in repair, a bridge for said county over Dry Cedar Creek," at a place particularly described, and of materials and dimensions specified; "which said bridge shall be built in a workmanlike manner, and shall be finished on or by July 11th, 1887," with a forfeiture for delay; "for building of which bridge under this instrument, and for the execution of the same as a bond, the said J. N. Meriwether, his heirs," &c., shall receive from said county, when said bridge is accepted, the sum of $250 by warrant on the county treasurer," . . "Now, therefore, if said bridge is built and accepted as herein provided, and said sum of $250 is paid to said J. N. Meriwether, as herein stipulated, and said bridge is kept in good repair by said Meriwether, and shall remain safe continuously, from the time of its acceptance, for the period of five years, for the passage of travellers and other persons, as well as for all purposes for which said bridge may be properly or lawfully used, then this obligation shall be void." According to the specifications mentioned in the bond, the bridge was to consist of a "Howe Truss span, seventy feet long," of specified dimensions, and "two approaches ninety feet long;" and it was stipulated that the county should "furnish all materials for the Howe Truss span, and additional labor necessary,"

[Meriwether v. Lowndes County.]

while Meriwether was to furnish all the material and labor for the construction of the approaches. The bridge was built according to the terms of the contract, and was accepted by the county; and it stood safe and in good condition until about April 1st, 1888, when it was washed away by the great flood of that date. Meriwether died in August, 1887, and letters of administration on his estate were granted to the defendant on the 4th October, 1887. The complaint set out the condition of the bond, and alleged as a breach, that the bridge was washed away as stated, that the defendant was notified by the county Board of Revenue to repair and rebuild it, and that she failed to do so.

The defendant demurred to the complaint, on these grounds: (1) because it does not show that it was made known to the Board of Revenue by any freeholder of the county, that the bridge was washed away, or was out of repair and impassable; (2) because it does not aver or show that said board ever acquired or had authority to give notice to defendant to rebuild or repair said bridge; (3) because it does not show that said board ever acquired or had authority to order this suit to be brought; (4) because it does not aver that defendant's intestate was ever notified to repair or rebuild said bridge, or that he ever refused or neglected to do so. The court overruled the demurrer, and the defendant then pleaded, (1) *not guilty;* (2) that the bridge was washed away "by said sudden and extraordinary flood, the immediate act of God, and not from any negligence on the part of defendant's intestate, either in the construction, or in the maintenance of said bridge;" (3) that there was no consideration for the intestate's execution of said bond, "so far as the span of the bridge mentioned in the contract is concerned." The court sustained a demurrer to the second plea, and issue seems to have been joined on the others. On the trial, the facts being admitted, the court charged the jury to find for the plaintiff, if they believed the evidence. The defendant excepted to this charge, and she here assigns it as error, with the overruling of the demurrer to the complaint, and the sustaining of the demurrer to the second plea.

A. A. WILEY, for appellant.—(1.) The demurrer to the complaint ought to have been sustained. The statute under which the bond was taken must be strictly construed, and nothing can be taken by intendment. The bond does not

conform to the requirements of the statute, and the complaint shows no right in the plaintiff to maintain the action. Code, § 1457; *Lee County v. Yarbrough*, 85 Ala. 592; *Bettis v. Taylor*, 8 Porter, 564; 18 Ala. 696. (2.) The county furnished the materials and hard labor for the span of the bridge, and the defendant's intestate only contracted to superintend the construction of the work; and these facts, if not fatal to the action, show a partial want of consideration of the bond. (3.) The destruction of the bridge, as admitted, "by an unprecedented and extraordinary flood, sudden and unexpected, greater and more destructive than had ever before happened in the memory of the oldest inhabitant"—in other words, by the act of God—was a complete defense to the action.—*Railroad Co. v. Reeves*, 10 Wall. 177; *Railway Co. v. Bridges*, 86 Ala. 448. The contract bound the builder to repair, but not to rebuild.

G. COOK, *contra*, cited Chitty on Contracts, 814, notes; *Harmony v. Bingham*, 2 Kernan, N. Y. 106; 1 Add. Contracts, § 327; 2 I b. § 949; *School District v. Dauchy*, 25 Conn. 530; *Ryan v. Dayton*, 25 Conn. 194; *Adams v. Nichols*, 19 Pick. 275; *Clark v. Franklin*, 7 Leigh, Va. 1; *James v. Conecuh County*, 79 Ala. 304.

SOMERVILLE, J.—The bond of the defendant's intestate, which is here sued on, for the consideration specified, bound him by covenant, not only to build the bridge contracted for by the county of Lowndes, but also for five years to keep the structure in repair. The express condition of the undertaking is, that said bridge shall be "*kept in good repair*" by the obligor, and shall "*remain safe* continuously from the time of its acceptance [by the county], for the period of five years, for the passage of travellers and other persons, as well as for all purposes for which said bridge may be properly and lawfully used."

It is not denied, on the one hand, that the bridge in question was constructed in a skillful and workmanlike manner; nor, on the other, that the county had the authority to contract generally for the construction of bridges, free or toll, and to take a bond to keep them in good repair for a stipulated period.—Code, 1886, §§ 1442, 1456–57. The breach of the bond assigned is, that the bridge was washed away by a flood, within the period it was stipulated to stand, and thereby became impassable to the public; and that the de-

fendant's intestate refused to rebuild and repair the bridge, although notified to do so by the Board of Revenue of the county, which was invested with the jurisdiction and powers conferred by the statute on courts of County Commissioners in reference to the subject of bridges.

1. The main defense urged to the suit is, that the bond imposed no duty on the obligor to rebuild the bridge, but only to keep it in repair so long as it stood; and that the structure was destroyed from no defect in the work, but by an extraordinary and unprecedented flood, which was an act of God, not covered by the covenants of the bond. This defense was clearly not good. There is a long line of cases, both in England and this country, which settle the proposition, that an unconditional express covenant to repair, or keep in repair, is equivalent to a covenant to rebuild, "and binds the covenantor to make good any injury which human power can remedy, even if caused by storm, flood, fire, inevitable accident, or the act of a stranger"; and that, while an act of God will excuse the non-performance of a duty created by law, it will not excuse a duty created by contract. *Abby v. Billups* (35 Miss. 618), 72 Amer. Dec. 144, and note, p. 148; *Ross v. Overton* (3 Cal. 309), 2 Amer. Dec. 552; *Polack v. Pioche*, 95 Amer. Dec. 115; *note*, 121–122; *Hoy v. Holt* (91 Penn. St. 88), 36 Amer. Rep. 659; *Miller v. Morris*, 40 Amer. Rep. 814; *School District v. Dauchy*, 68 Amer. Dec. 371; *Beach v. Crain*, 49 *Ib.* 369; *note*, 374; *Van Worner v. Crane*, 47 Amer. Rep. 582; *Warren v. Wagner*, 75 Ala. 188; 51 Amer. Rep. 446; *Nave v. Berry*, 22 Ala. 382. The courts have no authority to relieve contracting parties from the hardships often occasioned by such contracts, as it is within the power of obligors to provide in advance by excepting liability for casualties of this nature from the terms of their contracts, if they so elect. The contract, moreover, shows that the duty of keeping "in good repair" is coupled with the covenant that the bridge shall "*remain safe*" for the period stipulated. And the statute clearly contemplates that, when a bridge, constructed under such a contract, is "washed away, or so damaged [in any manner] as to become unsafe to the public," within the period covered by the bond, such accident shall be such a breach of the bond as to constitute a ground of action. Code, 1886, § 1457. The second plea, interposing this defense, was bad, and the court did not err in sustaining the demurrer to it.

2. Where a bridge is thus erected by a contract with the county, which contains a guaranty, by bond or otherwise, to stand for a stipulated period, the statute provides, if the structure is "washed away, or so damaged as to become un-- safe to the public," that the Commissioners Court "*shall*, upon the fact being made known to them by *any freeholder* of the county, *notify* the contractor to rebuild such bridge, if washed away, or repair it if damaged, and, in case of his refusal or neglect to do so in a reasonable time (to be judged by the court), *shall order suit* to be brought in the name of the county on such bond.—Code, 1886, § 1457. It is contended in behalf of the appellant, that the Commissioners Court had no authority to notify the contractor to rebuild, or to bring the present suit, until the fact of the damage to the bridge was made known to the court by a freeholder. The statute is not susceptible of this construction. The giving of such information by a freeholder was not intended as a condition precedent to the action of the court in giving notice to rebuild, or its authority to order suit brought; but to make a duty, otherwise discretionary, mandatory on the court. The authority to sue, and to take all preliminary steps necessary thereto, is an implied incident of the contract, and of the general statutory powers conferred on counties as bodies corporate, in any court of record.—Code, 1886, §§ 886, 1457; *James v. Conecuh County*, 79 Ala. 304.

3. It is further contended, that there was no consideration for the execution of the bond, so far as concerned the construction of *the span* of the bridge, because the county furnished all the material for this particular part of the structure, and paid the obligor the additional sum of $25.00 for superintending its erection. This fact does not, in our judgment, change the aspect of the case. The bond itself recites that the consideration of $250.00, paid by the county to the obligor, was both for the work of building the bridge and for the execution of the bond, which necessarily includes the assumption of its undertakings. One of these undertakings is the obligation to keep the entire bridge, and not a part of it, in good repair for the period stipulated. The authority of the Commissioners Court was to make a contract for building a bridge, and to take a bond guaranteeing the sufficiency and permanency. It was immaterial whether the defendant's intestate furnished all or a part of the materials, or whether the county furnished them. It was equally un-

important whether, as contractor, he built a part, and super-intended the building of the other part, or whether he built the entire structure. He has, for a valuable consideration, contracted to guarantee the whole, and must abide by the terms of his agreement. That the Commissioners Court had the authority to enter into such an agreement as that imported by the bond, we entertain no doubt.

It follows from the foregoing views that the rulings of the Circuit Court were all free from error, including the giving of the general affirmative charge requested by the plaintiff.

Affirmed.