26 So.2d 267

**PARRISH v. COFFEE COUNTY.**

**4 Div. 408.**

Supreme Court of Alabama.
May 9, 1946.

Rehearing Denied June 13, 1946.

C. B. Fuller, of Andalusia, for appellant.

J. C. Fleming, of Elba, for appellee.

STAKELY, Justice.

This case involves the liability vel non of a county for alleged defects in a bridge under § 57, Tit. 23, Code of 1940.

On June 18, 1943, appellant's intestate, Mrs. Mary Lula Parrish, was a guest on a fishing trip, which included a number of persons. Early in the morning the party in a wagon drawn by two mules crossed a bridge in Coffee County over Pea River, known as the Concrete Bridge. Later in the day on their return, they attempted to recross the bridge. One of the mules stepped on a plank in the floor of the bridge, claimed to be defective, with the result that his foot went through the floor of the bridge.

The resulting excitement of the mules caused the rear wheels of the wagon to be backed off the bridge, there being no banister or railing on the bridge at this point. The wagon, the mules and the entire party were thrown to the ground 20 to 25 feet below. Plaintiff's intestate was instantly killed.

Trial of the case, which was brought under the homicide act, resulted in a judgment for the defendant on a directed verdict for the defendant. Hence this appeal.

The giving of the affirmative charge is the only assignment of error and there is only one feature of the evidence to which our attention is directed. In giving the affirmative charge, the court said: "It is the court's opinion that the plaintiff has not made out a case by proving that portion of the bridge causing the accident was built by an independent contractor—and therefore according to the law the defendant is entitled to the charge." In this way the trial court presented the decisive question on this appeal.

There were tendencies of the evidence as follows: The bridge was constructed in 1914. The steel span of the bridge 119 feet by 12 with floor of concrete was built by the Converse Bridge and Steel Corporation, Chattanooga, Tennessee, under contract with Coffee County. The approaches to this span were built by one Tom Coleman under contract with Coffee County. The county did not take a guaranty in connection with either contract. The western approach was a short approach of one or two spans built of wood. The eastern approach, likewise built of wood, was about 300 feet in length.

The accident took place on the eastern approach about 75 feet from the steel and concrete span. There was a flood in 1929 which damaged the eastern approach, but not the western approach or the steel and concrete span. On November 10, 1930, the commissioners court, as shown by its minutes, adopted a resolution as follows: "Concrete Bridge Ordered Condemned. Upon motion duly adopted by the Court it is ordered that the approaches to concrete bridge be condemned and that Commissioner Donald give such due and legal notice thereof."

There was testimony introduced by the county tending to show that "the flood picked up the eastern approach to the bridge and set it out to one side." The eastern approach was completely down and wrecked and the east end thereof washed away, with the result that the bridge could not be crossed. After the flood a short approach of about 100 to 120 feet was built out of the salvaged material on the eastern end of the concrete bridge. This was the condition in 1931. The original approach was built on wood sills. In 1936 the county, without contract, removed this foundation and drove piling under the eastern approach. This piling extended from the concrete and steel span for a distance of 275 or 300 feet. The material used was new material.

Johnnie Davis, witness for the plaintiff, testified in substance that he was living in the vicinity of the bridge at the time of the flood in 1929, that nothing happened to the abutment, that when the water went back down the bridge dropped back down, that the bridge was not gone at all, the flood didn't wash the bridge away and it has been there ever since like it is now, except for some repairs, that the bridge is now on "fat lightwood piling."

L. M. Nelson, witness for the defendant, testified in substance that he was living near the bridge in 1929 at the time of the flood, that after the flood, the bridge was upset on the lower side down the river and wasn't moved out of place at all, but one tier had been washed away on the far eastern end of the bridge; that a span was built from the bridge out to the ground where the tier had been washed away, that in 1936 the bridge was overhauled; that he worked on the job, that they started at the concrete part and built out to the far end, that the old bridge was on cap sills, all of which was taken out and about 84 piling driven, that all the lumber on the old bridge that would do, was used; that they used some of the old flooring and a few cap sills; that they started from the concrete and worked east; that they tore out before they could build and they drove piling for about 300 feet; that he could not estimate the amount of old flooring used, that the work was done by the county. The witness was asked the following questions, to which he gave the following replies, respectively.

"Q. Let me ask you, did you repair it or build a new one? A. To tell the truth it was a dukes mixture. You might say it would be a new bridge and we used all the old parts in there that we could use.

"Q. The old bridge was there? A. That's right."

The liability vel non of the county is governed by Section 57, Title 23, Code of 1940, which is as follows:

"When a bridge or causeway has been erected by contract with the county commissioners or like governing body with a guaranty by bond or otherwise, that it shall continue safe for the passage of travelers and other persons for a stipulated time, any person injured, in person or property, before the expiration of such period, by a defect in such bridge or causeway, may sue in his own name on the bond

or other guaranty, and recover damages for the injury, and if no guaranty has been taken, or the period has expired, may sue and recover damages of the county."

In construing the foregoing statute, this court said:

"In the late case of Barbour County v. Reeves, [217 Ala. 415], 116 So. 119, we considered the duration of the county's liability, and held it continues only during the life of the bridge. So, if a bridge is washed away, and the county builds another under its own superintendence without a contractor, the statutory liability does not attach as to the new bridge." Hovater v. Franklin County, 217 Ala. 439, 441, 116 So. 526, 528.

See also Marshall County v. Cleveland, 218 Ala. 104, 117 So. 621; Greene County v. Eubanks, 80 Ala. 204.

In the case of Barbour County v. Reeves, 217 Ala. 415, 116 So. 119, 120, the bridge was so completely destroyed by floods that when it was reconstructed, "there remained fit for use, and was used, only one mudsill which had been embedded in the marl constituting the bed of the creek beneath the bridge." This court held there was no liability because a new bridge had been built and there was nothing to preserve the physical identity of the two bridges.

We do not think that the eastern approach should be considered separate and apart from the bridge as a whole. The bridge built in 1914 known as the Concrete Bridge was composed of the central span built of concrete and steel and the eastern and western approaches built of wood. The various portions of the bridge did not exist as independent parts. Together they constituted the bridge. "Ordinarily a bridge includes the abutments and approaches essential to make it accessible." 11 C.J.S., Bridges, § 1, p. 983; 8 Am.Jur. p. 191. See Meriwether v. Lowndes County, 89 Ala. 362, 7 So. 198. The steel and concrete span where it joined the eastern approach was 20 to 25 feet above the ground and so was not accessible without the eastern approach. It is true that one contractor built one part of the bridge and the other contractor the balance of the bridge. But this need not be here considered, because at no time was the bridge divided up as to liability by taking separate guaranties on separate parts of the bridge.

The bridge built in 1914 was built by independent contractors and no guaranty was taken. Under the terms of the statute, the county so far as the bridge built in 1914 was concerned, could be sued and made to respond in damages. Walker County v. Davis, 221 Ala. 195, 128 So. 144; Brown v. Shelby County, 204 Ala. 252, 85 So. 416; authorities supra. Was the bridge at the time of the accident such a new, such a different bridge, and was its identity with the bridge of 1914 so destroyed as to preclude liability under the statute? The central span was the same. The western approach was the same. Conceding, for the sake of argument, that the eastern approach was substantially rebuilt, with some of the original material used in the reconstruction, yet we do not think there was a new and different bridge in its entirety. Since a large and substantial part of the bridge remained the same, we do not think a new and different bridge came into existence.

We conclude that the court was in error in giving the affirmative charge.

Reversed and remanded.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.