# Chambers County *v*. Lee County.

*Action by Old against New County, for Part of County Debt.*

1. *Counties as corporations; how far subject to legislative control.*—Counties are public corporations, or *quasi* corporations, invested with a portion of the State's political power for the purposes of local administration, and subject, within the limits imposed by the constitution, to the general superintendence and control of the legislature; and in the creation of new counties, the legislature has the undoubted right to provide, as it has done by a general statute (Rev. Code, §§ 28–9), for an apportionment of the respective debts of the old counties between them and the new county.

2. *Action against new county, for pro-rata share of old county debt; presentation of claim to Commissioners' Court.*—An action at law lies against a new county, in favor of one of the old counties from which it was taken, for its *pro-rata* share of the existing debt of the old county, as ascertained and certified by its

[Chambers County v. Lee County.]

Commissioners' Court, if the Commissioners' Court of the new county refuses to issue its certificate of indebtedness, as required by the statute (Rev. Code, § 29); and it is not necessary that such debt shall be presented within twelve months (*Ib.* § 909), as required in the case of other claims against a county.

APPEAL from the Circuit Court of Lee.

Tried before the Hon. JAS. E. COBB.

This action was brought by the appellant against the appellee, each being a body corporate, to recover the sum of $8,007.83, alleged to be the defendant's *pro-rata* share of the county debt of Chambers on the 5th December, 1866, when Lee county was created; together with interest thereon. The record does not show when the action was commenced, the original summons and complaint having been lost; but a new summons and complaint were substituted, by consent, on the 12th November, 1875. The defendant demurred to the complaint, "because it shows on its face that the plaintiff has no legal claim against the defendant as a corporation, on which an action at law can be maintained; and because it shows that the demand sued on was not presented to the Commissioners' Court of Lee county, within twelve months after it became due or accrued." The court sustained the demurrer, and its judgment is now assigned as error.

J. J. ROBINSON, for appellant.—1. A county is a public, or municipal corporation, created for public purposes, and subject to the control of the legislature. The statute imposed this obligation on the new county, and the legislature had the undoubted right to make it liable for the debt.—Dillon on Municipal Corporations, §§ 36, 44, 129, and cases there cited; *Layton v. New Orleans*, 12 La. Ann. 515; *Brewster v. Syracuse*, 19 N. Y. 116; *Dunmore's appeal*, 52 Penn. St. 374; *Lycoming v. Union*, 15 Penn. St. 166.

2. An action at law was the proper remedy for the plaintiff to pursue.—*Davis v. Autauga County*, 32 Ala. 703; *Lowndes County v. Hunter*, 49 Ala. 507. That *mandamus* would not lie, see *Ex parte Lynch*, 2 Hill, 45; *Trustees, &c. v. The State*, 11 Ind. 205; 2 Watts & Ser. 416; 16 Serg. & R. 317.

3. If the plaintiff's debt required presentation, like other claims against a county (Rev. Code, § 909), within twelve months after it accrued, or became payable, the complaint shows a compliance with the statute. The statutory bar could not begin to run from the approval of the act creating the new county; for no courts were then organized in the county, and there were no officers to issue process. Until Chambers county had ascertained its own indebtedness, and from that calculated the debt due from Lee, there was no

definite demand due from the latter to the former county; and until this demand was duly presented, and refused, there was no cause of action in favor of Chambers county. The complaint shows that the indebtedness was ascertained on the 9th August, 1869, and presented to the proper court of Lee county on the next day.

W. H. BARNES, *contra.*—The act creating Lee county does not impose any liability on the new county, in its corporate capacity, for the debt or demand here sued on; nor is such liability imposed by the subsequent general statute enacted at the same session. The plaintiff may have a remedy by *mandamus,* or by bill in chancery; but there are insurmountable difficulties in the way of maintaining an action at law. Moreover, if the plaintiff had a cause of action at all, it was barred by the failure to present it within twelve months after it accrued, as required by section 909 of the Revised Code.

MANNING, J.—Lee county was created by an act of the general assembly, approved December 5th, 1866, of portions of the counties of Chambers, Tallapoosa, Macon and Russell; and the property embraced in the new county that was taken from each of the others was, by the 5th section of the act, made "liable to taxation for the *pro-rata* proportion of any debts" then due from those counties, respectively, to be levied, collected, and paid by the proper authorities of the new county. This was in effect provided for by the act creating the county of Lee. By another act, passed at the same session of the general assembly, which is incorporated in sections 28 and 29 of the Revised Code, it was enacted, as set forth in the latter section, that "the Court of County Commissioners of any county, from which a portion of its territory and inhabitants has been taken to form a new county, must ascertain, as nearly as practicable, the entire debt of their county at the time such portion of their county was taken off, and, out of such indebtedness, must ascertain the *pro-rata* share due from that part of the county taken off, and transmit a certified statement of the amount to the Court of County Commissioners of the new county to which such portion of their territory has been attached; and the Court of County Commissioners of the new county must then issue a certificate of indebtedness for such certified amount, in favor of the county making such certified statement, which shall be paid by said new county as now provided by law for the payment of county dues."

The complaint of Chambers county in this cause sets forth,

that such ascertainment of its debt existing when Lee county was created, and of the portion thereof with which Lee county was chargeable, was made out, and a statement thereof certified and transmitted, in August, 1869, to the Court of County Commissioners of Lee county, and its certificate of indebtedness therefor demanded—all in accordance with the law; and that said Court of County Commissioners of Lee county refused to deliver the said certificate of indebtedness; whereupon Chambers county brings its suit, &c. To this complaint a demurrer was filed, on the grounds, as alleged, that the complaint showed no cause of action to sustain a suit at law against Lee county, and showed that no demand was made within twelve months after the supposed debt became due or accrued. The demurrer was sustained, and the judgment on the demurrer is now assigned as error.

Every county in this State is a body corporate, and may sue and be sued in any court of record.—Rev. Code, § 897. Counties are public corporations, or *quasi* corporations, created by the State as a means of exercising a portion of its political power by local administrations; on which are imposed a part of the sovereign authority and duty to insure domestic tranquillity, and promote the general welfare, within the territorial limits to which they are assigned. From their origin, and the nature and object of their functions, these local administrations must act under the superintendence and control of the legislature of the State, and be subject to its power. While, therefore, this power must not be so exercised in relation to those sub-governments, if we may call them such, as to violate the restrictions which, in behalf of the life, liberty, and property of the persons residing within their limits, the constitution has imposed upon it— subject to these restrictions, and not violating the just rights which they are intended to guard, the legislature may command these local administrations to do what the public interest and public justice require. For the performance of their duties, they must have revenues, and they may be allowed to contract debts. The moneys thus raised, or advantages so obtained, are presumed to have been employed for the common benefit, in the making of roads, bridges, and public buildings, or otherwise. And when a county which owes a debt is required to yield a portion of the territory and inhabitants, that should contribute to the payment of it, to a new county, formed presumably for their benefit in part, what can be more in consonance with the public interest and public justice, than that the new county should pay a fair part of such debt? How, in other words, can it be held that the legislature, in requiring it to do so, has imposed upon it

burdens which the courts of the State should refuse to compel it to bear. The division of the territory of the State into counties, is a needful political arrangement, which the general assembly must make, and may from time to time change, as the public welfare or convenience, in its judgment, may require; and adjustments of the kind in question must also sometimes be then made, to prevent the changes from casting unequal and heavy burdens on a portion only of the people who ought to bear them. The object of the statute, under which the suit in this cause was brought, is to prevent this inequality; and it seems to us a judicious, certainly not an arbitrarily unjust enactment. Being spread upon the statute-book, it gives notice to communities, dissatisfied with the boundaries of their counties, of provisions of the law, subject to which new counties must be made. See, upon the power of the legislature to make such partition of the debt of an old county, between it and a new county composed in part of the old, 1 Dillon on Mun. Cor. §§ 127 and 129, and cases referred to, and sections 36 and 44.

2. In respect to the suit, and the forum in which it shall be brought, if the new county refuses to make the contribution, or deliver its certificate of indebtedness when properly demanded, the statute is silent. In *Autauga County v. Davis* (32 Ala. 703), this court decided, that if a statute creates a claim against a county, and does not prescribe an adequate remedy for its enforcement, a suit against the county by summons and complaint will be maintained. This was an action at law for physician's fees for services to a sick pauper of the county. We see no reason why a similar action may not be maintained on the facts constituting the present case. *Prima facie*, the certified statement, made out according to law by the Court of County Commissioners of Chambers county, presents the correct amount of the claim. It may doubtless, however, be shown to be incorrect, if it is so, and the sum be reduced. Although the calculations for ascertaining the amount may cause some trouble, they can be made by a jury; at least, we see no reason why Chambers county may not sue at law, and leave it to the defendant to seek the aid of a court of equity, if that be found necessary.

In respect to the objection, that the claim was not presented to Lee county, within twelve months after it accrued, according to section 909 of the Revised Code, we need not determine, whether it ought to be made by plea or demurrer. The charge which is the subject of this litigation, was imposed by a statute, of which the authorities of Lee county must necessarily have notice. It was a debt specifically

created by law, composed of a part of the debt of Chambers county then existing, with which the new county came into being, and not a debt subsequently arising under the law, out of the transactions of individuals, of which the Court of County Commissioners of Lee county need to be informed. This county received its existence and, as a part of itself, a portion of the territory and inhabitants of Chambers county, *cum onere*—with this debt as a part of the heritage; and it is not one of the class of claims embraced in section 909, which are required to be presented within twelve months.

The judgment of the Circuit Court is reversed, and the cause remanded.