167 So. 580

YEILDING et al. v. STATE ex rel. WILKINSON.

6 Div. 887.

Supreme Court of Alabama.

April 4, 1936.

Rehearing Denied April 30, 1936.

Ernest Matthews, R. H. Scrivner, and Frank Bainbridge, all of Birmingham, for appellants.

294

Horace C. Wilkinson, of Birmingham, for appellee.

KNIGHT, Justice.

Proceedings in the nature of quo warranto instituted by the state of Alabama on relation of Horace C. Wilkinson, seeking to oust the appellants from the office of members of the personnel board of Jefferson county, Ala. This board was created by an act of the legislature of Alabama, approved August 28, 1935. General Acts of Legislature 1935, p. 691.

The title of the act, under which the respondents attempted to justify their holding of said office, reads: "To create and establish in each County of the State of Alabama which has a population of 200,-000 or more people, according to the last Federal Census, or which may hereafter have a population of 200,000 or more people, according to any subsequent Federal Census, a County wide Civil Service System, affecting certain personnel whose compensation is now or may hereafter be payable in whole or part from the public funds of such counties or municipalities located therein; to create a Citizen Supervisory Commission and to create a Personnel Board and other agencies for the supervision and administration of said System in each of such Counties; to define the scope and extent of said System and the powers, duties and authority of said Commission, Board and other agencies; to regulate and define the manner, form and extent of the control, supervision and au-

thority of such agencies over such Personnel and over such counties and municipalities therein; to provide for payment of the expenses of each such agency and for a division of such expense between the county affected and the municipalities therein; to provide penalties for the violation of this Act and of rules and regulations adopted pursuant thereto; and to repeal all laws and parts of laws inconsistent with the provisions hereof."

On the hearing of the cause, the court was of the opinion the act in question was unconstitutional and void, and entered judgment of ouster accordingly. From this judgment the respondents have prosecuted the present appeal.

A careful reading and consideration of the act creating the personnel board demonstrates to our mind that there are but two questions of real moment to be determined. First, does the act deal with two subjects, county and municipal governments, in violation of section 45 of the Constitution; and, second, Was it within legislative competence to abridge the right of local self-government of municipalities falling within the class designated by the act, to the extent and in the manner attempted in the act? As we see it, these are the only two questions presented by this appeal, which call for discussion here.

There can be no escape from the conclusion that the one dominating purpose and thought of the lawmakers, in adopting the act now before us, was to secure greater economy and a better and more efficient administration of the affairs of the counties and cities affected by the act.

It is to be noted that the civil service system provided by said act deals only with such appointees and servants whose compensation may be payable in whole or in part from the public funds, within the designated territory. The mere fact that some of the employees draw their compensation from the funds of the county, while others draw their pay from the cities, is a mere incident.

Through the whole act there is complete unity and singleness of purpose; economy and efficiency in the administration of the affairs of the counties and cities falling within the provisions of the act.

█ It is insisted that, because the act deals both with county and city government, it contains two subjects, incongruous and unrelated, and therefore offends section 45 of the Constitution; that a county is a quasi municipal corporation, created solely as an arm of the state, to enable it to better administer its governmental affairs; that it is founded not upon the will or consent, necessarily, of the people of the territory out of which it is formed, but that it is created by the sovereign power of the state in accordance with the sovereign will, without the particular solicitation, consent, or concurrence of the inhabitants of the territory thus set apart; that a municipality is a legal entity, endowed by law with certain rights and powers, including the right of local self-government.

It is because of this supposed distinction between a county and municipality, it is insisted that the Legislature cannot in the same act deal with both; that, to do so, would render the act offensive to section 45, Constitution, as containing more than one subject, and therefore void.

It is clear, however, that counties and cities are political subdivisions of the state, each created by the sovereign power of the state, in accordance with the sovereign will, and each exercising such power, and only such power, as is conferred upon it by law. Each is a creature of the statute, and the same power which can create, can abolish.

What was said by this court in State ex rel. Wilkinson v. Lane, 181 Ala. 646, 62 So. 31, 34, is in line with the current of authority elsewhere, and is as follows: "Every power which is possessed by a municipality is a power which is delegated to it by the state, and every power which it possesses can, unless there is some constitutional inhibition to the contrary, be taken from it by the state." There the right of the Legislature to provide for appointment by the Governor of a commissioner of the city of Birmingham was recognized, and the only real contested question related to section 150 of the Constitution, due to the office (judicial) held by the newly appointed commissioner, Judge Lane.

This statement of the law by this court in the Lane Case, supra, finds direct and full support in the following statement of the rule found in 43 Corpus Juris, p. 76, § 15: "A municipal corporation can have no other source than the sovereign power; its creation is an attribute of sovereignty. It is a political creature, and the creature cannot be greater than its creator.

Certain sovereign powers, such as legislative power, and the power of eminent domain, are conferred on a municipal corporation, and nothing less than sovereign power can confer the supreme faculties upon any creature; nor can he who has no sovereign power confer any."

It is thus obvious that in the appointment and selection of appointees, agents, and officers in certain counties, and cities within such counties, and who may be paid out of the public funds of such counties and cities, the Legislature was dealing with but one subject, and that subject related to the administration of public affairs intrusted to its creatures, and over which it held the power to impose its sovereign will, in short, over which it had the power of life and death. In speaking to the said counties and cities through the act in question it spoke but one voice, and for one purpose; economy and efficiency in the administration of the affairs of the political entities which it had created.

This being true, can it be said that the act impinges upon section 45 of the Constitution? We think not.

In the case of State ex rel. Ward v. Henry, 224 Ala. 224, 139 So. 278, 281, Mr. Justice Gardner, in speaking for the court, made the following clear and concise statement of the rule on the question now before us, which is determinative, in our opinion, that the act does not offend section 45 of the Constitution: "It is settled under our decisions that however numerous the subjects stated in the title, and however numerous the provisions in the body of the act may be, if they can be by fair intendment considered as falling within the subject-matter legislated upon in the act, or necessary as ends and means to the attainment of such subject, the act does not offend our constitutional provision that no law shall embrace more than one subject, which must be expressed in its title. Allman v. City of Mobile, 162 Ala. 226, 50 So. 238; Ballentyne v. Wickersham, 75 Ala. 533, 534; Board of Revenue v. Hewitt, 206 Ala. 405, 90 So. 781; State ex rel. Leslie v. Bracken, 154 Ala. 151, 45 So. 841."

A statute has but one subject, no matter how many different matters it relates to, if they are all cognate, and but different branches of the same subject. Kelley v. Mayberry Township, 154 Pa. 440, 26 A. 595. It is to be noted that Pennsylvania has a constitutional provision similar to our section 45.

We are, therefore, at the conclusion that the contention that the act offends section 45 of the Constitution cannot be sustained.

This brings us to a consideration of the second question noted above, viz., Was it within legislative competence to abridge the right of local self-government of municipalities falling within the class designated by the act, to the extent and in the manner attempted in the act?

In the case of Mayor and Council of Americus v. Perry, 114 Ga. 871, 40 S.E. 1004, 1007, 57 L.R.A. 230, the Supreme Court of Georgia had occasion to consider the question of the right of the Legislature of Georgia to deal with the matter of the appointment of the officers of a municipality in that state, and that court, speaking through Cobb, J., observed: "The fact that municipal corporations, prior to the adoption of the constitution of 1877, were given the right and were exercising the right to control their own affairs through officers chosen by them, would not prevent the general assembly from taking away this right; there being nothing in the constitution which imperatively requires it to be construed as guaranteeing that this right of local self-government for municipal corporations shall exist absolutely in all cases. The right of the people of a municipal corporation to control its affairs is not an inherent right residing in the people, but is a right dependent for its existence upon legislative will, and how far they shall be given this right is a matter addressed solely to legislative discretion. See, in this connection, Diamond v. Cain, 21 La.Ann. 309; State v. Hunter, 38 Kan. 578, 17 P. 177; State v. Covington, 29 Ohio St. 102; Com. v. Plaisted, 148 Mass. 375, 19 N.E. 224, 2 L.R.A. 142, 12 Am.St.Rep. 566; Mayor, etc., of Baltimore v. State, 15 Md. 376, 378, 74 Am.Dec. 572."

Judge Dillon, in his Treatise on Municipal Corporations (5th Ed.) § 98, p. 154, says: "Independently of any constitutional guarantee an inherent right of local self-government which is beyond legislative control has been asserted to defeat legislation depriving or tending to deprive the corporation of the control of some part of its affairs. The occasion for the assertion of the right has usually been the enactment of a statute depriving a city or other public corporation of the power to appoint an officer or board ex-

ercising local functions, and conferring the power of appointment on the executive, or mandatory legislation for a local improvement, for the incurring of debt, the issue of bonds, or the payment of a claim, or a statutory enactment prescribing the terms and conditions of contracts by the municipality. Such legislation has frequently caused the courts to consider the abstract question whether a municipality has any inherent right of local self-government which is beyond legislative interference, and much has been said in support of or against the existence of the right, which should be construed as having reference only to the question before the court on the facts of the particular case, although couched in language so sweeping as to give it general application. It must now be conceded that the great weight of authority denies in toto the existence, in the absence of special constitutional provisions, of any inherent right of local self-government which is beyond legislative control. The Supreme Court of United States has declared that a municipal corporation in the exercise of all its duties, including those most strictly local or internal, is but a department of the State. The legislature may give it all the powers such a being is capable of receiving, making it a miniature State within its locality; or it may strip it of every power, leaving it a corporation in name only; and it may create and recreate these changes as often as it chooses, or it may itself exercise directly within the locality any or all the powers usually committed to a municipality."

In 19 R.C.L. p. 730, § 35, we find the following statement of the rule under consideration: "The power to create a municipal corporation, which is vested in the legislature, implies the power to create it with such limitations as the legislature may see fit to impose, and to impose such limitations at any stage of its existence."

We are in full accord with the statement of Judge Dillon in his statement of the law as above set out, and are at the conclusion that it was within legislative competence to enact the law in question; that it violated no inherent rights of the people of the municipalities affected.

Nor is there merit in the argument that the provision of section 4 of the act delegating to the citizens supervisory com-

mission the power to appoint a personnel board is unconstitutional delegation of legislative power. The section creates this commission, designating certain powers and duties, here unnecessary to enumerate. It is sufficient to say the provisions of this act as to the power and duties of the members of the commission meet the test and constitute the commissioners public officers, as defined by this court in Montgomery v. State, 107 Ala. 372, 18 So. 157, which is in harmony with the generally accepted rule. See 46 Corpus Juris, pp. 928–931. True, the power conferred by the Legislature to make laws cannot be delegated by that department to any other body or authority; but this does not preclude the Legislature from delegating any power not legislative, which it may itself rightfully exercise. 1 Cooley on Constitutional Limitations (8th Ed.) p. 224. The delegation to the commission of the power of appointment is not delegating lawmaking power, but merely a delegation of power that it could rightfully have exercised itself in an administrative capacity, and does not come within the prohibition or rule referred to. This question was considered in Parke v. Bradley, State Treasurer, 204 Ala. 455, 86 So. 28, and in Fox v. McDonald, 101 Ala. 51, 13 So. 416, 21 L.R.A. 529, 46 Am.St.Rep. 98, and the right of the Legislature to delegate this appointing power fully sustained. We feel that further discussion of this objection is unnecessary.

We find nothing in Fox v. McDonald, supra, which in the least militates against the conclusion here reached. The pivotal point of that decision related to the constitutional power of the Legislature to delegate to the probate judge of the county the power to appoint a police commission for the city of Birmingham, which commission selected petitioner as chief of police of said city. There is much discussion in the opinion of the division of the state into distinct departments, all of which was leading to the conclusion that this appointive power was not unconstitutional, because conferring upon a member of the judicial department the power of appointment. The holding was in accord with the quotation from Mr. Freeman in his note to 13 Am.St.Rep. 125, where it is said: "The truth is, that the power of appointing or electing to office does not necessarily and ordinarily belong to either the legislative, the executive, or the judicial department. It is commonly exer-

cised by the people, but the legislature may, as the lawmaking power, when not restrained by the Constitution, provide for its exercise by either department of the government, or by any person, or association of persons whom it may choose to designate for that purpose." And this is in accord with the view we here entertain.

To uphold this act it is not at all necessary to question or define the limits of legislative control over the corporate or proprietary activities of municipalities, such as the ownership and operation of public utilities. For certain purposes our laws recognize the construction and maintenance of public streets as of this class.

The power to own and operate public utilities is derived, like other municipal power, from the state.

█ Conceding that the due process clause of the Federal Constitution (Amend. 14), and the clause forbidding the impairment of the obligation of contract (article 1, § 10), protect the property and contract rights acquired under state authorization, this by no means forbids legislative regulation and control by civil service laws designed to protect all interests concerned against inefficiency, waste, and the demoralization of government through the spoils system. The civil service set up is itself subject to the same judicial review as any other agency, if the guaranties of the Federal Constitution are violated.

The question of legislative control over municipal corporations, including their proprietary operations, is fully discussed in City of Trenton v. State of New Jersey, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937, 29 A.L.R. 1471. See, also, Shirk v. Lancaster City, 313 Pa. 158, 169 A. 557, 90 A.L.R. 688.

Civil service laws as applicable to municipalities are treated in 43 Corpus Juris, p. 606 et seq., and are there declared very generally upheld as against constitutional attack.

If it be conceded that the act in question is a local law, yet we find nothing therein which runs counter to paragraph 18 of section 104 of the Constitution, as argued.

█ The act is original in form and substance, and is not amendatory in character. In our opinion, section 104 of the Constitution is here without application.

█ Mindful of our solemn duty to uphold a law, which has received the sanction of the Legislature, unless we are convinced beyond a reasonable doubt of its unconstitutionality, we have given the questions involved that careful consideration that their importance required.

It is our judgment that the act in question, as for any objection here urged against its constitutionality, was and is a valid exercise of legislative power.

It follows that the judgment of ouster appealed from must be and is reversed, and one here rendered adjudging petitioners entitled to the office from which they were by the judgment of the circuit court excluded.

Reversed and rendered.

ANDERSON, C. J., and GARDNER, BOULDIN, and FOSTER, JJ., concur.

THOMAS and BROWN, JJ., dissent.

BROWN, Justice (dissenting).

The appellants were, by a judgment of the circuit court, ousted as members of the "Personnel Board for the government and control by Civil Service rules and regulations and practices [set out and authorized by the Act] of all employees and appointees [of Jefferson County] and the municipalities therein, *and of each and every appointing authority therein,*" offices created by the Act approved August 28, 1935, entitled: "An Act to create and establish in each County of the State of Alabama which has a population of 200,000 or more people, according to the last Federal Census, or which may hereafter have a population of 200,000 or more people, according to any subsequent Federal Census, a County wide Civil Service System, *affecting certain personnel whose compensation is now or may hereafter be payable in whole or part from the public funds of such counties or municipalities located therein;* to create a Citizen Supervisory Commission and to create a Personnel Board and other agencies for the supervision and administration of said System in each of such Counties; to define the scope and extent of said System and the powers, duties and authority of said Commission, Board and other agencies; to regulate and define the manner, form and extent of the control, supervision and authority of such agencies over such Per-

sonnel and over such counties and municipalities therein; to provide for payment of the expenses of each such agency and for a division of such expense between the county affected and the municipalities therein; to provide penalties for the violation of this Act and of rules and regulations adopted pursuant thereto; and to repeal all laws and parts of laws inconsistent with the provisions hereof." (Italics supplied.) Gen.Acts 1935, p. 691.

From that judgment they have appealed.

The ground upon which the court rested its judgment is that said act is unconstitutional and void.

The act was assailed by appellee as unconstitutional on several grounds; among others, and the first discussed by appellants, that it was enacted in violation of that clause of section 45 of the Constitution which requires that *"Each law shall contain but one subject, which shall be clearly expressed in its title,"* in that both its title and body deal with the government and control of the personnel of counties of a designated class, if the act is a general law, if local, of Jefferson county; and the government and control of the personnel of all municipal corporations organized and existing in such county or counties, as the case may be, separate and distinct public institutions or agencies, fundamentally different in character and purpose, constituting two incongruous subjects. (Italics supplied.) Const. 1901, § 45.

In view of the importance of the controversy presented, and of the apparent public interest in the questions involved, we deem it not amiss to repeat some of the utterances of this court in respect to the power invoked by this controversy.

"The judicial power—the power of determining, interpreting, and administering the existing law—is committed to the courts established by the constitution, or which it authorizes the general assembly to establish. The constitution of the State, not encroaching on the powers delegated to the government, or the limitations on State authority imposed by the constitution of the United States, is the paramount, supreme law, of primary obligation. All legislative enactments are subservient to it, and if they conflict with it, are without validity. When such enactments affect public or private right, and become the subject of judicial controversy, judicial power arises. On the court clothed with the jurisdiction to hear and determine the controversy, to declare the right, interpret and administer the existing law, rests, of necessity, the responsibility of adjudicating the constitutionality of the enactment. It is the gravest and most delicate duty the judiciary are commanded to perform. It is a duty peculiar to the institutions of our country; elsewhere the judicial is subordinate to the legislative power, and owes to it implicit obedience.

"The preservation of the constitution in its integrity, obedience to its mandates, is exacted alike from the legislative and the judicial departments of the government. Each are co-ordinate, not subordinate departments; each, in its constitutional sphere, is separate and distinct from the other. The obligation resting on each is common; the duty resting on the judicial department cannot arise until the legislative has exercised its power, and mindful of its obligations, has declared that without invading constitutional limitations, a law shall exist. When the judicial department is invited to declare the legislative has invaded the constitution it was under obligation to preserve, though it cannot shrink from the inquiry, it will approach it with caution, examine the question in every possible aspect, standing as an impartial arbiter between the co-ordinate departments of the government, subject to the obligation from which its duty arises, and the party complaining of wrong, bound to accord to the legislative department the presumption that it has not transcended its powers—will not, unless it is clear that the enactment and the constitution cannot co-exist, pronounce a sentence of nullity." Mayor, etc., of Mobile v. Stonewall Insurance Company, 53 Ala. 570, 574, 575.

The ultimate power to preserve the Constitution in its integrity is conferred by it on the courts, whose duty it is to prevent its dismemberment by illegitimate and unconstitutional practices which usually gain a foothold by insidious and apparently harmless approaches to meet imagined emergencies or supposed calamities. 6 R.C.L. p. 78, § 76; Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Toney v. State, 141 Ala. 120, 37 So. 332, 67 L.R.A. 286, 109 Am.St.Rep. 23, 3 Ann. Cas. 319; Thomas v. State, 16 Ala.App. 145, 75 So. 821.

While it is well settled that the requirements of the quoted clause of the Consti-

tution are not to be so exactingly enforced as to cripple legislation, nevertheless that clause is mandatory and cannot be ignored. Const.1901, § 45; Ballentyne v. Wickersham, 75 Ala. 533.

And, "if the title to an act indicates, and the act itself actually embraces, two different subjects diverse in their nature and having no necessary connection, the whole act must be treated as void." Allman v. City of Mobile, 162 Ala. 226, 231, 50 So. 238, 240; Ballentyne v. Wickersham, supra; Thomas v. State, supra.

The mandate of the Constitution applies, not only to duplicity of subject, but it requires the subject to be *clearly expressed*. Lindsay v. United States Savings & Loan Association et al., 120 Ala. 156, 24 So. 171, 42 L.R.A. 783; Kendrick v. State, 218 Ala. 277, 120 So. 142; Fuqua v. City of Mobile, 219 Ala. 1, 121 So. 696.

Otherwise expressed, "generality or comprehensiveness of the subject is not a violation of section 45 * * * provided the title is not uncertain or misleading." Harris v. State ex rel. Williams et al., 228 Ala. 100, 151 So. 858, 860.

The subject of a legislative act is the persons or things about which the Legislature has expressed its legislative will. Kendrick v. State, 218 Ala. 277, 120 So. 142.

In the act under consideration, the subject of the legislation is the management and control of the personnel of counties having a population of 200,000 or more people, if the act be a general law, or of Jefferson county if the act is held to be a local law; and the personnel of the municipalities located therein; the persons who render service for such county or counties and are paid by such county or counties, and persons who render service and are paid by the municipal corporations located therein.

That these are subjects of the legislation is emphasized by the provisions of section 2 of the act creating the personnel board and prescribing its jurisdiction "for the government and control by Civil Service rules and regulations and practices hereinafter set out or authorized of *all employees* and appointees of such counties and the municipalities therein and of *each and every appointing authority therein* and such Board is now given and vested with such power, authority and jurisdiction" that is to govern and control all employees and appointees and every appointing authority, within such county or counties and municipalities. (Italics supplied.)

The characteristics of counties are well defined in the law, and nothing is better settled than that a county is not a municipal corporation. It is not, strictly speaking, a corporation, but is "only a *quasi-corporation*," and exists for "governmental purposes only." Chambers County v. Lee County, 55 Ala. 534; James v. Conecuh County, 79 Ala. 304; Holifield v. Robinson, 79 Ala. 419; Dunn v. Court of County Revenues of Wilcox, 85 Ala. 144, 4 So. 661; Stanfill v. Court of County Revenue of Dallas County, 80 Ala. 287; Askew v. Hale County, 54 Ala. 639, 25 Am.Rep. 730; 2 Mayf.Dig. p. 916, § 1.

In a recent case, Montgomery, Superintendent of Banks, v. State et al., 228 Ala. 296, 300, 301, 153 So. 394, 398, involving the question whether or not a county was entitled to the prerogative preferential right of payment over other creditors out of assets of an insolvent debtor, it was observed:

"A proper solution and determination of the question depends largely upon the legal status of a county—whether it is a separate political entity, or whether it is merely a political subdivision of the state, created for the purpose of aiding the state in the administration of the affairs of the state. If it is a separate political entity, it would seem that it would not possess the sovereign right to preference in the payment of debts due it by insolvent debtors, because there can be no two sovereign rights in the same territory. But, in the last analysis, the question really to be determined [is], Is the money collected in and by a county, moneys of the county, or in law moneys of the state?

"What is a county? Chief Justice Brickell, in the case of Askew v. Hale County, 54 Ala. 639, 25 Am.Rep. 730, observes: 'It (county) has corporate characteristics, but it is not a municipal corporation, though often so termed. It is an involuntary political or civil division of the State, created by statute to aid in the administration of government. It is in its very nature, character and purposes, public, and a governmental agency, or auxiliary, rather than a corporation. Whatever of power it possesses, or whatever of duty it is required to perform, originates in the statute creating it. It is created mainly, for

the interest, advantage, and convenience of the people residing within its territorial boundaries, and the better to enable the government to extend to them the protection to which they are entitled, and the more beneficently to exercise over them its powers. All the powers with which the county is entrusted, are the powers of the State, and all the duties with which they are charged, are the duties of the State. If these were not committed to the county, they must be conferred on some other governmental agency. The character of these powers, so far as counties in this State are concerned, are all for the purposes of civil and political organization. The levy and collection of taxes, the care of the poor, the supervision and control of roads, bridges and ferries, the compensation of jurors, attending the State courts, and the supervision of convicts sentenced to hard labor, as a punishment, for many violations of the criminal law, it is the general policy of the State to entrust to the several counties, *and are all but parts of the power and duty of the State.* These powers could be withdrawn by the State, in the exercise of its sovereign will, and other instrumentalities or agencies established, and clothed with them.' (Italics supplied.)

"In the case of State v. Brewer, 64 Ala. 287, it was held: 'The taxes levied for county purposes, while in process of collection, or after collection, may be withdrawn from the county, or from its treasury, and *appropriated as the legislature may direct.* There can be no ground for complaint—the State is not dealing with an individual, nor with a corporation, having or claiming adverse rights. It is simply in the pursuit of its own policy, adapting that policy to public necessities and exigencies, as may be deemed most promotive of public rights and interests.' (Italics supplied.)

"This statement was quite recently reaffirmed in the case of Board of Revenue and Road Com'rs of Mobile County et al. v. Puckett [227 Ala. 374] 149 So. 850.

"So, after all is said and done, county funds are in reality state funds, subject to state control, and no part of which can be expended by the county without express or implied authorization by the state. Should the governing board of a county expend the county funds, or any part of the same, except in cases, and for purposes, authorized by the state, they would be civilly liable therefor."

To like effect, see State ex rel. Chilton County v. Butler, State Tax Com'r, 225 Ala. 191, 142 So. 531; Tuscaloosa County v. Alabama Great Southern R. Co., 227 Ala. 428, 150 So. 328. And in First Nat. Bank of Scottsboro v. Jackson County, 227 Ala. 448, 150 So. 690, it was held that a county, being a mere state agency created for state purposes, is not suable unless expressly authorized by statute.

In Montgomery, Superintendent of Banks, v. City of Athens, 229 Ala. 149, 152, 153, 155 So. 551, 552, in which the said city asserted the prerogative right of preference, it was observed:

"The question of prerogative right of a state or county to a preference, in a proper case, to be paid from the assets of an insolvent bank, was considered in Montgomery, Superintendent of Banks, v. State, [228 Ala. 296], 153 So. 394; Montgomery, Superintendent of Banks, v. Sparks, Tax Collector, 225 Ala. 343, 142 So. 769; Green, Superintendent of Banks, v. City of Homewood, 222 Ala. 225, 131 So. 897; and touched upon in Limestone County v. Montgomery, Superintendent of Banks, 226 Ala. 266, 146 So. 607, 87 A.L.R. 164; Montgomery, Superintendent of Banks, v. Wadsworth, 226 Ala. 667, 148 So. 419. The rule of the former cases is discussed and amplified in Montgomery, Superintendent of Banks, v. State, [228 Ala. 296], 153 So. 394, and the extent to which the doctrine of sovereign right will apply exemplified. There is quite a distinction in law between the status of a county and that of a city. A county is an involuntary association created as an arm of the state, that the latter may more properly function; whereas a town or city is a voluntary association created and built upon the voluntary assent of the community and its citizens, and enjoys the privileges and rights given in its charter of creation and the laws governing the same. This distinction between county and city entities is drawn and recognized by text-writers (19 R.C.L. p. 1111; 43 C.J. p. 183; Chafor v. City of Long Beach, 174 Cal. 478, 163 P. 670, L.R.A. 1917E, 685, Ann.Cas.1918D, 106, and note) and the rule of the general decisions and our Constitution and statutes (Sections 37, 38, section 220 et seq. Constitution; and section 1739 et seq., Code).

"It is further established in this jurisdiction that a city or town engaging in the business of furnishing electric lights, water, etc., is not in the exercise of governmental powers or functions, but of proprietary or business powers, and it is governed by the same rules of law applicable to persons or ordinary business corporations engaged in a like business. Town of Athens v. Miller, 190 Ala. 82, 66 So. 702; City of Birmingham v. Whitworth, 218 Ala. 603, 119 So. 841. See, also, 19 R. C.L. p. 691 et seq., § 4, pp. 696, 697, §§ 8 and 9.

"We are of opinion, and so hold, that there is no prerogative right in the city of Athens, and therefore no preference in the payment of its claims over the general depositors and creditors of the bank."

A municipal corporation is not merely a public agency of the state. As defined by 43 Corpus Juris, p. 65, § 1, it "is a legal institution formed by charter from sovereign power, erecting a populous community of prescribed area into a body politic and corporate with corporate name and continuous succession and for the purpose and with the authority of subordinate self-government and improvement and local administration of affairs of state. The foregoing definition presents the logical and practical view of a municipal corporation. It is a brief formula embracing the essential elements and excluding other kindred bodies called quasi corporations. It expressly includes: The body of individuals; the sanction of the sovereign; the definite public purpose; the necessary powers; the charter; and the primary incidents of name and succession. · * * * It impliedly excludes parishes, counties, townships, and districts, which are almost municipalities and yet are deficient in some of the essential attributes of a municipal corporation; while it expresses the complex nature of the corporation, whereby it acts as a municipium, and also as a local agency for administering and enforcing the laws of the State."

Treating "Municipal Aspect," the text proceeds: "Being devised and preserved as an institution to supply the wants and regulate the conduct of congested populations by allowing them respectively to preserve and maintain their own peculiar traditions, customs, and habits of life, by ordinances of their own making and *officers of their own choice,* a municipal corporation is *peculiarly an organization* for local self-government, subordinate to the state. In this respect it is purely municipal according to history and etymology. When the municipality undertakes to supply, to those inhabitants who will pay therefor, utilities and facilities of urban life, it is engaging in business upon municipal capital and for municipal purposes." (Italics supplied.) 43 Corpus Juris, pp. 70, 71, § 6.

In exercising its characteristics as a municipium, and business corporation to meet the needs and conveniences of the local community, in the ownership and enjoyment of property for such purposes, such corporation is entitled to protection under the Constitution like other business corporations. In so far as they are governmental agencies, they are subject to the will of the Legislature. The subject is fully treated in 1 McQuillan on Municipal Corporations, beginning with section 188 (167), and especially sections 190 (169), 192 (171). In respect to its local and proprietary interests, it is protected under the "contract" and "due process" clauses of the Constitution. The principle is stated in many American cases, though not without conflict. See the notes to 1 McQuillan, supra; 1 Dillon on Municipal Corporations, §§ 97, 98 and 99; 1 Cooley on Const. Limitations (8th Ed.) 488, 489; City of Lexington v. Thompson, 113 Ky. 540, 68 S.W. 477, 57 L.R.A. 775, 101 Am.St. Rep. 361; 43 C.J. 604, note 48; 19 R.C. L. p. 751, § 56, p. 759, § 64; State ex rel. Holt et al. v. Denny, Mayor, et al., 118 Ind. 449, 21 N.E. 274, 4 L.R.A. 65; City of Evansville et al. v. State ex rel. Blend et al., 118 Ind. 426, 21 N.E. 267, 4 L.R.A. 93; State ex rel. Geake et al. v. Fox, Comptroller, 158 Ind. 126, 63 N.E. 19, 56 L.R.A. 893.

Except as limited by the Constitution, construed in the light of the common law (Mayor, etc., of Mobile v. Stonewall Ins. Co., 53 Ala. 570), the power of the Legislature to enact laws is plenary, and while it may refuse to authorize the formation of municipal corporations, or may destroy them, it seems to be well-settled, where they have been chartered and organized by authority of the state's sovereign will, under its authorization, the Legislature is without power to take away from them their essential attributes of local self-government in respect to corporate affairs, by delegating to an outside agency the selection and control of their agents and em-

ployees, and the management of their corporate property.

As was said in Fox v. McDonald, 101 Ala. 51, 68, 13 So. 416, 419, 21 L.R.A. 529, 46 Am.St.Rep. 98, "The conventions which framed our several constitutions, therefore, had no need to expressly reserve to municipal corporations the legislative, executive, and judicial power so long wont to be exercised by them, when, in the distribution of the powers of the government of the state, they declared that the legislative, executive, and judicial power should be confided to the respective departments or bodies of magistracy by them created and defined. The reservation arose by implication, out of the existing order of things." Since this pronouncement the provisions of the Constitution of 1875, therein construed, have been adopted into the Constitution of 1901, ad litteram, and under the authorities they must be considered as a part of the Constitution itself. Montgomery v. State, 231 Ala. 1, 163 So. 365, 101 A.L.R. 1394; Barnewall v. Murrell, 108 Ala. 366, 18 So. 831.

State ex rel. Wilkinson v. Lane, 181 Ala. 646, 651, 62 So. 31, recognized such implied limitation, and in City of Lexington v. Thompson, 113 Ky. 540, 68 S.W. 477, 57 L.R.A. 775, 101 Am.St.Rep. 361, the subject is fully developed in line with the holding of our decisions.

In line with Fox v. McDonald, supra, the weight of authority seems to be that the right of local self-government is inherent in local communities organized into municipal corporations, and so long as such corporations are allowed to exist, the Legislature is without power to deprive them of such right. State ex rel. Jameson et al. v. Denny, Mayor, 118 Ind. 382, 21 N.E. 252, 4 L.R.A. 79; State of Indiana ex rel. Sterling R. Holt et al. v. Caleb S. Denny et al., 118 Ind. 449, 21 N.E. 274, 4 L.R.A. 65; City of Evansville et al. v. State ex rel. Blend et al., 118 Ind. 426, 21 N.E. 267, 4 L.R.A. 93; State of Iowa ex rel. Win S. White v. W. H. Barker et al., 116 Iowa, 96, 89 N.W. 204, 57 L.R.A. 244, 93 Am.St.Rep. 222; City of Lexington v. Thompson, supra.

Chapter 16 of the Code (section 179 et seq.), embracing 120 sections, deals with counties, their organization, functions, and powers, while municipal corporations, and the statutory law in respect to them, is embodied in chapter 43 of the Code (section 1739 et seq.), consisting of 687 sections.

The cases of Sheppard v. Dowling, Judge, etc. 127 Ala. 1, 28 So. 791, 793, 85 Am.St.Rep. 68, Mitchell, Judge, etc., v. State ex rel. Florence Dispensary, 134 Ala. 392, 32 So. 687, 689, and State ex rel. City of Mobile v. Board of Revenue & Road Com'rs of Mobile County, 180 Ala. 489, 61 So. 368, are easily differentiated from the instant case. In the Sheppard and Mitchell Cases, the acts related to the police power and the municipalities were dealt with as governmental agencies. This, in itself, differentiates those cases. However, in the first case it was observed: "The act has but one subject; its purpose is single. It is simply to provide for the exclusive sale of liquors by municipalities. To do this it was necessary to empower them to engage in the business, and to prohibit others to engage in it. That is all that is expressed in its title, and that is clearly expressed therein." In Mitchell's Case, it was observed: "The purpose of the act, as expressed in its title,—its subject,—is to establish and maintain, regulate, and make efficient a dispensary in Florence, and a branch thereof in that part of Florence known as 'East Florence,' Lauderdale county, Ala. Those of the provisions of the act having relation to issuance of liquor licenses to run up to the time the dispensary should be put into operation are cognate, germane, and complimentary to its provisions for the establishment and carrying on of the dispensary, necessary and proper, in *view of existing law,* to the rounding out and perfection of the new system of dealing in liquors which the act proposed to establish." (Italics supplied.)

In State ex rel. City of Mobile v. Board of Revenue & Road Com'rs of Mobile County, 180 Ala. 489, 499, 61 So. 368, 371, the title of the act was: "To provide for the more efficient working of the public roads in Mobile county and certain streets and public thoroughfares in the city of Mobile; provide for the control, working, building, maintenance and improvement of the same by the board of revenue and road commissioners of Mobile county; to prescribe the duties and fix the authority of said board; provide for the levy and collection of a road tax, and the method of disbursing moneys necessary to carry out the provisions of this act, and provide penalties for violations of its provisions." The court observed: "The several subdi-

visions of this title are all germane to one another, and might well have been grouped under the broader subject of highways in Mobile county. Certainly the Legislature might in one act have made all necessary and appropriate provisions for any highway in the county between designated points, though one of the points lay within, and the other without, the city."

The *personnel* of a county are the officers, agents, and employees through which it functions, expresses its life, and accomplishes the purposes for which it is created. The *personnel* of a municipal corporation are the officers, agents, and employees through which it functions in the conduct of its corporate business, and performs such duties to the public in general as may be imposed on it by the sovereign by whose authority it exists. The functions of counties and the functions of municipal corporations are clearly "diverse in their nature and have no necessary connection." Allman v. City of Mobile, 162 Ala. 226, 231, 50 So. 238, 240.

In the light of these observations, we are led irresistibly to the conclusion that there are two subjects dealt with in both the title and the body of the act, and therefore that it is violative of section 45 of the Constitution.

The further contention is that the purpose of the act, its subject, if it be conceded that it is not duplicitous, is not clearly expressed in the title.

To remove any ground for quibbling as to whether the purpose of the act as expressed in its title is its subject, we quote from the opinion of the court in Mitchell, Judge, etc., v. State ex rel. Florence Dispensary, 134 Ala. 392, 401, 32 So. 687, 689: "The purpose of the act, as expressed in its title,—*its subject,*—is to establish and maintain, regulate, and make efficient a dispensary." [Italics supplied.] See, also, Kendrick v. State, 218 Ala. 277, 120 So. 142.

The title in the instant act expressed the subject in these words: "To create and establish *in each County of the State of Alabama which has a population of 200,000 or more people, according to the last Federal Census,* or which may hereafter have a population of 200,000 or more people, according to any subsequent Federal Census, a County wide Civil Service System, *affecting certain personnel* whose compensation is now or may hereafter be payable in whole or part from the public funds of such counties or *municipalities* located therein." (Italics supplied.)

Section 1 of the act defines the terms "Appointing Authority" or "Appointing Power" as "Person, officer, board, council, commission or other body whose lawful jurisdiction or powers are confined wholly or primarily within the territorial limits of such county and who or which possesses final power to appoint persons to services, jobs, offices or positions, the compensation of which is paid in whole or in part from the public funds of such county or from the public funds of a municipality in such county subject to this Act." Gen. Acts 1935, p. 691.

Section 2 of the act creates a "Personnel Board" and confers on it county-wide jurisdiction to govern and control "by Civil Service rules and regulations and practices hereinafter set out or authorized of all employees and appointees of such counties and the municipalities therein *and of each and every appointing authority therein.*" (Italics supplied.) Gen.Acts 1935, pp. 691, 692.

Section 3 prescribes the number and qualifications of the personnel board; three members "each of whom shall be over 21 years of age, of *recognized* character and ability, a bona fide resident and qualified voter of such county," and providing that, "in any county which is or may hereafter be divided by law into two divisions for the trial of cases in the Circuit Court of such county, not more than two members of the Board shall be residents of the same division." (Italics supplied) Gen.Acts 1935, p. 693.

Section 4 of the act creates a self-perpetuating body designated as "Citizens Supervisory Commission," and invests it with exclusive authority, if it functions at all, to select and appoint or elect the members of the personnel board, and to fill all vacancies in said personnel board. The persons so designated as constituting the "Supervisory Commission" are the heads of certain described institutions, organizations, societies, and groups, and with two exceptions they are not required to be residents of the county, nor householders, freeholders, or qualified voters therein, much less of the municipalities. That section provides that said "Supervisory Commission" shall consist of "the persons, who now are and who from time to time shall be (1) The Judge or Judges of the District Court or District Courts of the United States, for

the District or Districts having exclusive or concurrent territorial jurisdiction of such county or the largest part thereof, provided he or they be residents of such county. (2) The Presidents or other chief executive officers, by whatever name called, of the two institutions of higher learning, if there be any, in such county, having the greatest number of bona fide resident students. (3) The President or other Chief Executive Officer of the Association, Group or Society, if there be one, in such County, comprising within its membership at least fifty-five per cent of the licensed, practicing physicians resident in such county and provided that not less than ninety per cent of the membership of such Association, Group or Society shall consist of licensed physicians and provided that any reputable citizen of such county who shall be licensed by the State of Alabama to practice medicine and who shall have paid his state and county license fee to practice, shall under the rules of such Association, Group, or Society, be eligible to membership therein. (4) The President or other Chief Executive Officer of the trades council, Group, Society or Association, if there be one in such county or in any city in such county subject to this Act, with which is affiliated more than one-half of the unions or other organizations of the workers in the organized trades and crafts in such county or city, provided that no union or other labor organization shall be counted for the purposes of this Act as affiliated with more than one such Trades Council, Group, Society or Association in such county or city, and provided that no council, group, society, or association shall be recognized unless it was in existence and properly functioning six months prior to the time this Act becomes effective in such county and provided that if there be no Council, Group, Society or Association in such county or city, with which is affiliated more than one-half of the unions or other organizations of the workers in the organized trades and crafts in such county or city, then the Council, Group, Society or Association having the largest affiliation of such unions or organizations shall be here designated. It is contemplated that one Member be seated for any county-wide Council, Group, Society, or Association, or one for each such city organization if there be no county-wide organization of the character described. (5) If there be in such county as many as three or more trades, crafts, groups or divisions of workers who are organized into what are commonly known as labor unions or organizations whose organizations are not affiliated with the trades Council, Group, Society or Association described in the subparagraph (4) immediately preceding this subparagraph, then such organized crafts, groups or divisions of workers may in any manner agreeable to the majority of the presidents or other chief executive officers of the locals of such nonaffiliated labor organizations located in such county select one of such presidents as a member of the Citizens Supervisory Commission who shall remain a member of such Commission as long as his electors shall designate. This sub-paragraph shall be applicable solely to the County as a whole and not as to the separate cites (cities) therein. (6) The President or other Chief Executive officer of the Chamber of Commerce or other most nearly similar organization of each city subject to this act in such county, provided, that by 'Chamber of Commerce' is meant an organization in existence six months prior to the time this Act becomes effective in such county, to membership in which any reputable man engaged in mercantile, manufacturing, banking, jobbing or similar businesses is eligible, and which, most nearly of all organizations in such city, regardless of name, performs the functions of such organizations as are commonly known as Chambers of Commerce. (7) The President or other Chief Executive officer of the Junior Chamber of Commerce or other most nearly similar organization of each city subject to this Act in such county, provided that by Junior Chamber of Commerce is meant an organization substantially similar to Chambers of Commerce as defined hereinbefore, except that membership therein may be restricted by an age qualification, and provided that such organization must have been in existence for six months in such city when this Act became effective therein, and if there be no organization in such city substantially like a Junior Chamber of Commerce, representation for such city under this classification shall fail. (8) The President, Chairman or other chief executive officer of any County-wide Council, Group, Society or Association of Camps of United Confederate Veterans. By a Camp of United Confederate Veterans is meant a local organization with its meeting place in such County of persons who are residents of Alabama and who actually served as soldiers or sailors in the army or navy of the Confederate States of America or State of Alabama for or during the period of War between the States. If at

any time there be no such County-wide organization of such Camps, then the President, Chairman, Commander or other chief executive officer of the Camp in the County which as of the first day of January of each year has the largest bona fide membership. (9) The President, Chairman or other chief executive officer of any County-wide Council, Group, Society or Association of Camps of United Spanish-American War Veterans. By a Camp of United Spanish American War Veterans is meant a local organization with its meeting place in such county of persons who are residents of Alabama and who actually served as soldiers, sailors or marines in the armed services of the United States of America for or during the period of war between the United States and Spain. If at any time there be no such County-wide organization of such camps, then the President, Chairman, Commander or other chief executive officer of the Camp in the county which as of the first day of January of each year has the largest bona fide membership. (10) The President, Chairman, or other chief executive officer of any County-wide Council, Group, Society or Association of Posts of the American Legion. By Post of the American Legion is meant a local organization with its meeting place in such county of persons who are residents of Alabama and who actually served as soldiers, sailors or marines in the armed services of the United States of America for or during the period of the World War. If at any time there be no such County-wide organization of such Posts, then the President, Chairman, Commander or other chief executive officer of the Post in the County which as of the first day of January of each year has the largest bona fide membership. (11) The President or other chief executive officer by whatever name called, of each city-wide Parent-Teachers Association in each city subject to this Act and which city is not excused or excluded herefrom by act of its governing body as herein provided. (12) The Probate Judge of such county. In the event one or more of the foregoing persons fail or refuse to serve, such fact shall not invalidate the acts of the Commission, provided as many as five members of the Commission serve." Gen.Acts 1935, pp. 694–696.

Section 6 creates the *"Office of Director of Personnel,"* and empowers the board to elect him and fix his salary, and provides that he "shall hold office at the will of the Board," and, further, that: *"After the second year* during which a County shall be subject to this Act the Director shall be *à bona fide resident of such County and a voter thereof.* * * * The Director's salary shall be payable monthly upon the warrant of the Board signed by two members thereof, drawn upon the treasury or depository of the county and shall be paid out of the general funds of the county." Gen. Acts 1935, p. 699. (Italics supplied.)

Section 7 (Gen.Acts 1935, p. 699) defines the duties and powers of the "Personnel Director," conferring on him the power: "(1) Subject to the approval of the Board [to] *appoint or remove such subordinates as may be necessary to administer a scientific and economical. personnel system and fix their compensation";* confers legislative power on the board to make rules *"which. * * * shall have the force and effect of law* unless they are contrary to the provisions of" the act. Said section and the subsequent sections confer on said board and the director broad powers, and section 37 (Gen.Acts 1935, p. 712) repeals all laws or parts of laws in conflict with the act. In short, said act sets up a self-perpetuating supergovernment over counties and municipalities to which it applies; destroys the existing order by paralyzing the arm of the officers elected by the people, and is contrary to the spirit of our institutions and popular representative government designed by the Constitution; imposes the burden of maintaining this super self-perpetuating government on the citizens of the counties and municipalities by taxes gathered from their properties and energies. Such drastic supercontrol and directorate overstep the idea of selective civil service in the selection of public employees.

The title to the act does not foreshadow such drastic legislation; therefore, the act is broader than the title, and is violative of section 45 of the Constitution, in that the purpose of the law is not clearly expressed in the title. Mobile Dry-Docks Co. et al. v. City of Mobile, 146 Ala. 198, 40 So. 205, 3 L.R.A.(N.S.) 822, 9 Ann.Cas. 1229; State ex rel. Bassett v. Nelson et al., 210 Ala. 663, 98 So. 715; Fuqua v. City of Mobile, 219 Ala. 1, 121 So. 696.

Not only this, the title is deceptive. The bill, resulting in the act, was offered in the House of Representatives on the thirtieth legislative day, with notice and proof of publication in Jefferson county as a local bill. It was referred to the committee on local legislation, and its passage was resist-

ed by one member of the local delegation, and it was passed as a local bill.

In the Senate it was referred to the committee on local legislation and there passed as a local bill.

In the body of the act it specifically deals with a situation existing in Jefferson county, and in designating the "Supervisory Commission" it deals with persons and organizations in said county of Jefferson; and is clearly a local law applicable to that county only.

Yet the title is so expressed as to indicate that it is a general law, and was calculated to deceive the public and the members of the Legislature. Lindsay v. United States Savings & Loan Association et al., 120 Ala. 156, 24 So. 171, 42 L.R.A. 783; Kendrick v. State, 218 Ala. 277, 120 So. 142; Harris v. State ex rel. Williams et al., 228 Ala. 100, 151 So. 858.

In so far as the Legislature undertook to set up a self-perpetuating county-wide agency and directorate over municipal corporations, destroying local self-government inherent in said institutions, it exceeded its power. This right of local self-government was reserved in the people by the Constitution, as we have shown.

So the question here is: Are the provisions with respect to the personnel of counties separable, leaving an enactment, sensible and capable of operation, which the Legislature would have passed and approved? If not, the whole act must be pronounced void. This is so, notwithstanding the legislative declaration embodied in section 35 of the act (Gen.Acts 1935, p. 712). If there is an inseparable blending of the invalid provisions with the valid, the whole is bad. Ward v. State ex rel. Lea, 224 Ala. 242, 139 So. 416; State ex rel. Crumpton v. Montgomery et al., Excise Commissioners, 177 Ala. 212, 59 So. 294.

The provisions with reference to municipal corporations are interlaced in the title and in nearly every section of the act, and the act provides that the expense of maintaining the system provided in the act shall be apportioned between the county and the several municipalities. It will be noted that the legislative declaration in section 35 as to "severability" does not meet the situation here. It is: "In the event this Act shall be held inapplicable or unenforceable as to any *particular county or municipality or class of municipalities* its validity and applicability to other counties or municipalities or classes of municipalities shall not be affected thereby." That is not to say, that if the act is invalid as to all municipalities, the Legislature would have passed it as to counties. (Italics supplied.)

The conclusion is inescapable that the void provisions as to municipalities are so interlaced with the provisions as to counties, that they are not separable, and the entire act must be pronounced void.

The rulings of the circuit court are in accord with these views.

I therefore respectfully dissent.

THOMAS, J., concurs in the foregoing dissent.