254 So.2d 341

**CITY OF DOTHAN**

v.

**Clifford R. LUCAS.**

**4 Div. 37.**

Court of Civil Appeals of Alabama.

Nov. 3, 1971.

C. R. Lewis, Dothan, for appellee.

Wm. G. Hause, Jere C. Segrest, Dothan, for appellant.

BRADLEY, Judge.

This case was commenced in the Circuit Court of Houston County by the appellee (hereinafter referred to as Lucas) when he filed suit on the common counts against the appellant (hereinafter referred to as City) for work and labor performed and money received by appellant for the use of appellee resulting from work done for the City for which he had not been compensated.

To the complaint there was filed a plea of the general issue, and special pleas averring that Lucas had resigned from his employment with the City and was not entitled to be paid; and that Lucas had voluntarily performed the work without authorization from the City. The demurrers filed to the special pleas were overruled. Thereupon, Lucas filed replications averring that he withdrew his resignation prior to its being accepted by the appointing au-

thority as provided by law; and that the resolution adopted by the City abolishing the position he held was invalid for the reason that the City was clothed with no such authority. The City's demurrer to the replication was overruled; whereupon the City joined issue on the replication and trial was had before the court sitting without a jury.

The evidence introduced at the trial consisted of testimony from witnesses for both parties and stipulations entered into by the parties prior to trial.

The evidence tended to show that Lucas was employed by the City of Dothan as a Housing Inspector.

The position of Housing Inspector was created in the classified service of the City by the Personnel Board of said City, pursuant to its authority as set out in Act No. 273, Acts of Alabama 1947, Vol. I, p. 196, and as amended. This position was created upon the written request of the then City Engineer, Mr. Harold E. Meeks.

The request for the creation of the position was apparently prompted by a desire on the part of the City's governing body to qualify said City for the receipt of Federal funds in connection with the Federal program known as the "Workable Program for Community Improvement." The enforcement of the City's new housing code was also involved in this effort.

After the position was created, Mr. Lucas was selected to fill it, after having—for ought that appears—complied with the requirements of the City's Civil Service Act.

Lucas worked in this position from December 7, 1964 until January 22, 1970, the date he tendered his resignation from said position. The resignation was to be effective on February 10, 1970.

The written resignation was given to Lucas' immediate superior, Mr. Carl Martin, the Building Official in charge of the Building Section of the Engineering De-

partment of the City, with a copy being sent to the Personnel Director of the City's Civil Service.

The resignation was forwarded to Mr. Floyd Clayton, who was the Operations Superintendent in charge of the Operations Section of the City's Engineering Department. Mr. Clayton was apparently acting head of the Engineering Department at this time, for there was no City Engineer. On this same date—January 22, 1970—the City Commissioners accepted the resignation of Lucas and on the following day, the resignation, with the acceptance of the Commissioners appearing thereon, was forwarded to the Personnel Director.

Six days later Lucas wrote a letter rescinding his resignation. The letter was sent through his supervisor, Mr. Martin, to Mr. Clayton and the Personnel Director.

Then on February 4, 1970 Lucas wrote two letters, one to the Personnel Board seeking a clarification of his position in the classified service, pointing out to the Board that the acting head of the Engineering Department had never accepted his resignation and therefore he felt like he was still in the classified service of said City; and the second one advised the Personnel Director that the resignation was not prompted by political considerations or pressures and questioned the legal authority of the Commissioners to accept the resignation.

On February 10, 1970, the date on which the resignation was to be effective, the City refused to allow Lucas to use a City vehicle in carrying out his duties. Heretofore, and for as long as he had been employed as the Housing Inspector, Lucas had used a City vehicle in carrying out his work. Consequently, Lucas was put to using his own vehicle for which he now claims compensation. The evidence reveals that adequate records of the mileage were kept by him and turned in to his supervisor. These records were also approved by the Personnel Director.

Lucas received his last paycheck on February 26, 1970, and his position in the classified service was abolished by the Commissioners on March 3, 1970 by Resolution No. 3869, which had been duly adopted.

The resolution recited that the action was taken for the purposes of economy and efficiency in the operation of the Building Section of the Engineering Department on the ground that other inspectors in the section could perform the duties of the Housing Inspector's job. There was evidence introduced which contradicted this evidence.

Lucas continued to perform his duties for the City until May 5, 1970, and the evidence shows that he has not been compensated for that work.

The Personnel Board of the City of Dothan concluded that the position of Housing Inspector had not been abolished by the Commissioners and that Lucas had not resigned from such position. He was, therefore, considered to be in the classified service of said City.

The trial court, after hearing, awarded judgment in favor of Lucas. There was a motion for new trial, which was overruled. From the judgment on the merits and motion, an appeal was taken to this court.

There were nineteen assignments of error, but only nine assignments were argued. Those assignments not argued are deemed waived. Rule 9, Supreme Court Rules.

In its judgment, which was accompanied by a written opinion, the trial court found four issues involved in this case: (1) Was Act No. 273, as amended, constitutional? (2) Did Lucas have the authority to withdraw his resignation prior to its effective date? (3) Was the City, through its Commissioners, legally empowered to abolish the position of Housing Inspector which had been created by the Personnel Board in the classified service? and (4) Did Lucas perform his duties during the period alleged and also use his personal ve-

hicle in carrying out those duties; and was he compensated for his services and for the use of his vehicle?

Appellant's assignments of error one and eight question the ruling of the trial court that Act No. 273, as amended, is constitutional and that the Legislature had the authority to give the Personnel Board of the City of Dothan the power to abolish positions in the classified service of said City.

Appellant contends that Act No. 273 violates Section 104(18) of the Alabama Constitution of 1901 in that it amends the City Charter by taking away from the governing body of the City the right to abolish the position of Housing Inspector.

Section 104, Constitution of Alabama 1901, reads in part as follows:

"§ 104. The legislature shall not pass a special, private, or local law in any of the following cases:

\* \* \* \* \* \*

"(18) Amending, confirming, or extending the charter of any private or municipal corporation, or remitting the forfeiture thereof; provided, this shall not prohibit the legislature from altering or rearranging the boundaries of the city, town, or village."

Act No. 273 was enacted by the Legislature in 1947 as a Local Act (Act No. 273, Acts of Alabama 1947, Vol. I, p. 196) and has been amended several times since that date, the last time being 1965.

This Act created a Civil Service System for the City of Dothan.

It provided for a Supervisory Committee, a Personnel Board, a Personnel Director, powers to make rules and regulations, authorized a classification of positions for employees in the service of the City, authorized a pay plan for the employees in the classified service, provided for a uniform system of testing for the positions, provided a method of filling vacancies in the positions created, provided for transfers, demotions and provisional appointments, authorized probationary work periods, prescribed a procedure for layoffs, discharges and suspensions, and other supporting authority.

■ In determining the validity of a statute, it is our duty to make that determination based on the assumption that the statute is valid unless we are convinced beyond a reasonable doubt that the statute is unconstitutional. Trailway Oil Company v. City of Mobile, 271 Ala. 218, 122 So.2d 757. And, we would point out that the Legislature is supreme in the enactment of statutory law—Trailway Oil Company v. City of Mobile, supra—and what in the way of power is given to a municipality by the Legislature can be taken away by it. Yeilding v. State, 232 Ala. 292, 167 So. 580.

■ In the instant case, the Legislature, by virtue of an enactment (Act No. 217, Acts of Alabama 1961, p. 244, a general Act with local application) chartered the corporation of the City of Dothan by permitting it to adopt the commission form of government, and giving it certain powers. In this Act the Legislature specifically provided that any city adopting the provisions of said statute would retain its merit system if it had one at the time said Act was adopted. The pertinent part of Act No. 217, supra, is as follows:

"Section 8. Every city within the purview of this act shall be governed and managed by the board of commissioners provided for herein. Except as otherwise provided herein, each and every officer and employee of the city other than the commissioners shall be selected and employed by the board, or under its direction, and all salaries and wages paid by the city, except as otherwise provided by this act, shall be fixed by the board. The commissioners shall have the authority to create all necessary offices and shall prescribe and may at any time change the power, duties, and titles of all subordinate officers and employees of the city \* \* \* and all such officers

and employees shall hold office and be removable at the pleasure of the board of commissioners, except as otherwise provided herein. * * * *And it is provided further that if any city within the scope of this act has a merit system for the governance of its personnel, or employs a city manager for the management of its affairs, the jurisdiction, powers, duties, and operation of such merit system or city manager shall not be affected by this act, and the merit system and city manager shall continue to function as now provided for, as this act is not intended to supersede, modify, or repeal in any manner any legislation—general, local, or special—providing a merit system or city manager for the city."* (Emphasis added.)

It is quite apparent from reading the cited portion of Act No. 217, supra, that the Legislature did not intend to give to the City governing body the authority appellant contends it received from said Act.

The Legislature specifically provided that a merit system in existence at the time of the enactment of Act No. 217 was to remain in effect.

The passage of Act No. 217 did not represent an effort on the part of the Legislature to amend a general Act with a local Act; the general Act (Act No. 217) incorporated, in effect, the provisions of the local Act (Act No. 273) by making it a part of the authority thereby given to the City of Dothan.

The logical effect of the legislative enactment was to take away certain authority and control of the City's governing body over the employees of the City in the classified service and repose that authority in a different body. We think the Legislature had that authority. Yeilding v. State, supra.

As to the argument that the local Act, i. e., Act No. 273, supra, had the effect of amending a general Act, i. e., Act No. 217, supra, it has been held by our Supreme Court that a local civil service act, such as we have here, which is original in form and substance, complete within itself, and being an independent Act, as opposed to one amendatory of another Act, does not contravene Section 104(18), supra. State ex rel. Howard v. Cole, 269 Ala. 39, 110 So.2d 273; Yeilding v. State, supra.

We do think that Act No. 273 is an Act original in form and substance, and not amendatory of any other Act. Hence it does not conflict with Section 104(18) of the Constitution. When said Act was passed, there was no other statute in existence setting up a merit system for the employees of the City of Dothan, so it was original in every way as far as the City of Dothan was concerned. Nor could it be amendatory of another Act, for there was no other Act.

Notwithstanding this assessment of Act No. 273, the effect of Act No. 217, a general Act, was to incorporate Act 273 into its provisions and make it a part thereof as effectively as if it had been spelled out in detail by the express provisions of Act No. 217.

The right to hire and fire is still reposed in the responsible officials of the City. The principal change is that there has been established a new procedure for this to be done for the purpose, as stated in Heck v. Hall, 238 Ala. 274, 190 So. 280, of promoting better government by attracting employees who are better qualified and who are assured of tenure so long as they perform satisfactorily and do not violate the rules, which protects the employee from the political tides that ebb and flow.

The argument made in support of the unconstitutionality of Act No. 273 is without merit.

Assignments of error two, four and nine question the finding of the trial court that Resolution No. 3869 adopted by the City Commission on March 3, 1970, was void for the reason that it contravened the authority of the Personnel Board of the City

of Dothan as set out in Act No. 273, supra, and for the further reason that said resolution was invalid for its having been adopted in bad faith.

Appellant contends that the City Commission had the authority to abolish offices created by it, and that the motives prompting such a decision cannot be inquired into by the courts. Furthermore, it was contended that there was no bad faith involved in the decision to abolish the position of Housing Inspector as found by the trial court, and in order for the court to find bad faith in such action, it must appear on the face of the proceedings.

Appellee says, in response, that the Legislature of Alabama has taken away the authority of the governing body of the City of Dothan to abolish the position of Housing Inspector and reposed such authority in the Personnel Board of said City, see Act No. 273, supra, and as amended, and for appellant to contend otherwise is saying, in effect, that the Legislature does not have the authority to confer upon a municipal corporation such power nor the authority to take away any such power so given. Appellee says this is not the law and cites us to Trailway Oil Company v. City of Mobile, supra.

*Trailway* does hold that the Legislature, except where restricted by the Constitution, does have supreme power in the creation of subordinate agencies of government, such as municipal corporations, and in prescribing their duties and powers, and that said Legislature has the power to enlarge, abridge or entirely withdraw, any authority previously given to a municipal corporation.

Applying that rationale to the situation at bar, it is readily apparent that the Legislature, by enacting Act No. 273, gave to the Personnel Board the power and authority to abolish positions in the classified service of the City of Dothan to the exclusion of the governing body of said City.

The applicable provisions of Act No. 273 provide that:

"* * * the Board or the Director may visit all offices and places of employment to ascertain information and to advise with the heads of the various departments concerning their method of handling matters affecting the Service; * * * The Board, or the Director, shall have the authority to inquire into the number of employees in any office or department and, after notice and an opportunity to be heard by the Appointing Authority and the employees affected, the Board may determine there is an excessive number of employees in such office or department, in proportion to the amount of work required, and, in that event, it shall issue an order in writing to the Appointing Authority to eliminate the number of employees found to be excessive, in the manner prescribed by this Act, or the Rules and Regulations, and such order shall be forthwith complied with by the Appointing Authority. The Board and the Director shall also study the organization of the system, procedure of administration and other matters which affect the successful operation of the system and make such lawful changes as may increase efficiency or economy."

Section 2 of said Act No. 273, as amended by Act No. 20, Acts of Alabama 1965, 2nd Spec.Sess., Vol. I, p. 30, the definitions Section, provides, in pertinent part, as follows:

"* * * 'Appointing Authority' means a Department Head; * * * 'Department Head' means * * * (2) City Engineer in charge of the Engineering Department * * *."

Section 10 of said Act authorizes the Board to promulgate Rules and Regulations for the administration of the provisions of said Act, and provides, in part, as follows:

"* * * All Rules and Regulations, duly adopted by the Board, if not incon-

-sistent with the provisions of this Act, shall have the force and effect of law and shall become effective when a copy thereof is recorded in the office of the Clerk of the City."

It appears to us that the Legislature of Alabama intended that the City of Dothan be operated under a commission form of government and a civil service system. Act No. 217 and Act No. 273, supra. The Legislature specifically said that the governing body shall have power to hire and fire all employees of the City and to prescribe their salaries and wages and, further, to create or abolish offices or positions, except where there was an existing merit system for the governance of its personnel, then that system shall remain in full force and effect and this Act, i. e., Act No. 217, shall not supersede, modify or repeal said merit system law.

As we have said before, and, since we do not think it unduly repetitive, point out again, our Supreme Court has said:

"We are not unmindful of the rights of local self-government, but we are bound by the principle that authority to municipalities comes from the State, and can be given and taken by the will of the legislature consistent with the Constitution." Ott v. Moody, 283 Ala. 288, 216 So.2d 177.

We said that Act No. 273 did not violate Section 104(18) of our Constitution, and since this possible restriction on the legislative authority has been eliminated, it is apparent to us that the Legislature has taken away the authority of the governing body of the City of Dothan to abolish the position of Housing Inspector. See Act No. 217, supra. And its action, as evidenced by Resolution No. 3869, is a nullity.

As to the assertion that the trial court erred in holding that the City Commissioners exercised their apparent authority in bad faith, we will now consider this aspect of assignments of error two, four and nine.

Appellant says that Resolution No. 3869 was adopted in good faith and that such fact appears from the record of the proceedings had in regard to it. Appellant says also that the evidence taken at the trial of this case amply supports the assertion that the action abolishing the position of Housing Inspector was taken in good faith.

Appellee says that the trial court found as a fact that the action was not taken in good faith and that such finding was amply supported by the evidence.

■ It is apparent from a reading of the opinion of the trial court that said court was aware of the rule of law that bad faith in the enactment of a statute must appear from the face of the Act of that body and not from extrinsic facts. Clements v. Commission of City of Birmingham, 215 Ala. 59, 109 So. 158.

■ The court was also aware of the legal principle that the motives of a legislative body inducing action cannot be inquired into by the courts. State ex rel. Bozeman v. Hester, 260 Ala. 566, 72 So.2d 61. And, this principle governs unless it is shown that fraud or palpable abuse of discretion has been committed by the legislative body. Pilcher v. City of Dothan, 207 Ala. 421, 93 So. 16.

In Miller v. State, 249 Ala. 14, 29 So.2d 411, it was held that bad faith in the enactment of a resolution or ordinance is evidenced where it appears therefrom that the purpose of the resolution or ordinance was to evade superior laws.

■ We think that was the purpose of Resolution No. 3869, and we also believe that such purpose appears from the face of the resolution, which is in effect, the trial court's finding.

It was obvious that the power and authority to abolish positions in the classified service of the City of Dothan had been taken from the City Commissioners by the Legislature and placed in the Personnel

Board of said City. Act No. 217, supra. Resolution No. 3869 was an attempt on the part of the Commissioners to evade and usurp the power and authority reposed in the Personnel Board by the Legislature as set out in Act No. 273, supra, to abolish positions in the classified service of the City of Dothan, and it is therefore void. Miller v. State, supra.

Assignments of error ten and eleven question the ruling of the trial court that Lucas could withdraw his resignation prior to its effective date and that the acceptance thereof by the City Commissioners was ineffectual.

The trial court, in holding that the resignation submitted by Lucas and withdrawn by him prior to its effective date was not binding, relied on the case of State ex rel. Almon v. Fowler, 160 Ala. 186, 48 So. 985.

In that case the clerk of the circuit court tendered his resignation to the circuit judge in the following language:

"* * * Decatur, Ala., Aug. 21, 1908. Hon. D. W. Speake, Judge, etc., Decatur, Ala.: I hereby resign the office of clerk of the circuit court of Morgan, and ask that the same be accepted by you, the acceptance to take effect at such time as you may fix or determine. James S. Fowler."

The circuit judge indorsed his acceptance thereon in the following language:

"The above and foregoing resignation is hereby accepted by me, the said acceptance to take effect on the 19th day of September, 1908. D. W. Speake, Judge."

Prior to September 19, 1908, the circuit clerk withdrew his resignation.

The Supreme Court said:
"An unconditional resignation of a public office, to take effect immediately, cannot be withdrawn, even with the consent of the power authorized to accept it, and it does not seem to be material that the resignation had not been accepted.— State [ex rel. Williams] v. Fitts, 49 Ala.

402; 23 Am. & Eng.Ency.Law, 424. A contingent or a prospective resignation, however, can be withdrawn at any time before it is accepted.—29 Cyc. 1404.
* * *

"The resignation, in the case at bar, was not unconditional, as was the one in the Fitts Case, supra, but was to become final and effective only upon the acceptance by the judge. An unconditional acceptance by the judge would have rendered the resignation conclusive and effective; but, while the acceptance was indorsed by the judge August 21, 1908, it was conditional, in that its operation and effect was postponed until September 19, 1908. The acceptance not becoming effective until said 19th of September, the respondent had the right to withdraw said resignation, which he did on the 12th of September, 1908. The resignation was by its terms to take effect only upon the acceptance by the judge, and, the judge having made the acceptance effective upon a future day, the respondent had the right to withdraw said resignation before the arrival of the date fixed by the judge. The resignation did not take effect immediately, but was subject to the acceptance of the judge, and effective only upon the time designated by him, and was withdrawn before the said acceptance, by its very terms, became effective."

In the case at bar, Lucas submitted his resignation in writing to Carl Martin, his immediate superior, as follows:

"I hereby tender my resignation as Housing Inspector, City of Dothan, effective February 11, 1970. /s/ Clifford R. Lucas, Housing Inspector."

It appears on the face thereof that it was accepted by Carl Martin on January 22, 1970, the same day it was tendered, and then sent to Floyd Clayton. Nowhere does it appear that Floyd Clayton accepted the resignation. Instead there appears on the resignation the indorsement by the three Commissioners that the resignation was ac-

-cepted by them on January 22, 1970. There is a further indorsement on the resignation that it was sent to the Personnel Director on January 23, 1970, with the above mentioned indorsements thereon.

Thereafter and prior to February 11, 1970, Lucas, in writing, informed the Personnel Director and Floyd Clayton that he was withdrawing his resignation.

It appears that the resignation in the case at bar was to be effective, so far as Lucas was concerned, on February 11, 1970. This was, according to the pronouncements in *Fowler*, supra, a "prospective" resignation i. e., it was to take effect at a specified future date. Whereas, in *Fowler,* the resignation was "contingent," i. e., the resignation was dependent on its acceptance by the circuit judge. Had the judge in *Fowler* not accepted the resignation, that would have ended the matter; likewise, had he accepted immediately, that would have also ended the matter. But he stated that his "acceptance" was to take effect on a future day certain.

The Supreme Court held that the postponement of the acceptance to some future day gave to the person tendering the resignation the right to withdraw any time prior to the effective date of the acceptance.

In the instant case the resignation was made prospective, i. e., it was clearly stated that such resignation was to be effective on a future day certain. And there is, we think, a good reason why the resignation was so worded.

There appears the following from Rule VII of the Personnel Rules duly adopted by the Personnel Board of the City of Dothan pursuant to its authority contained in Act No. 217, supra:

"Section 1. RESIGNATION. Any employee wishing to leave the classified service in good standing shall file with his appointing authorities and the Personnel Director, at least one week before leaving, a written resignation stating the date the resignation shall become effective and the reason for leaving. Failure to comply with this procedure may be considered cause of denying such employee future employment by the city. * * *"

It is not inconceivable that Lucas wished to leave the Dothan employment in good standing so that, in the future, should he wish to do so, he would be considered for re-employment. In order to leave the Dothan classified service in good standing, he resigned by making the resignation effective at least a week in advance as required by the above mentioned Personnel rule.

Had he resigned effective immediately, and there had been an acceptance by the proper authorities, according to the rationale of *Fowler*, there would have been a binding resignation at that time.

But, had this been done, Lucas would have left the classified service of Dothan in such a manner as to possibly affect future employment with the City. In other words, he would have violated one of the rules of the City's Personnel Board in leaving the classified service.

We do not believe, however, that we are called on to resolve this hiatus, for the reason that the resignation was not accepted by the proper authority.

We are convinced that the City Commissioners had no authority to "accept" a resignation of an employee in the classified service of the City of Dothan. It is quite obvious that the Legislature, by virtue of Act No. 273, supra, gave the authority for making appointments in the classified service to the appointing authority, who, in the case of Lucas, would be the City Engineer, or in his absence, an acting City Engineer. This appointing authority would be authorized also to transfer employees, demote employees, lay-off employees, suspend employees and discharge employees, all, of course, in accordance

with the controlling statute and applicable promulgated rules.

If the appointing authority has all of this power and control over the employee in the classified service, it is reasonable to conclude that the appointing authority would be expected to note his acceptance of a classified employee's resignation on said resignation before it is sent to the Personnel Director.

To conclude otherwise would leave us in the position of holding that a resignation by a classified employee is a unilateral undertaking requiring no acceptance. And, under the rationale of *Fowler*, absent an acceptance, a prospective resignation may be withdrawn at any time prior to its effective date. This would permit, as pointed out by the City, an employee to vacillate unnecessarily so far as his continued employment is concerned, which could lead to an undue amount of turmoil in the resignation and replacement of employees in the classified service.

We do not believe this was the result intended by the Legislature when it enacted Act No. 273, supra, nor was this the intent of the Personnel Board when it promulgated Rule VII.

The logical and reasonable effect to be given Section 1 of Rule VII is that the appointing authority shall accept the resignation of the employee on the resignation itself, which is then forwarded to the Personnel Director. The Director knows that there is going to be a vacancy in that position and starts a search for a replacement according to the procedure authorized.

The employee knows the date he is to leave the classified service, and the appointing authority knows the date on which the replacement is to report to work.

Furthermore, the principle enunciated in *Fowler* will have been adhered to in that there has been an acceptance of the resignation precluding a withdrawal thereof.

In the case at bar, there was no acceptance of the resignation by the appointing authority prior to its effective date nor prior to the withdrawal thereof; hence the resignation was validly withdrawn, Lucas was still an employee in the classified service of the City of Dothan, and due to be paid for his services.

The City argues in its assignments of error thirteen and fourteen that the trial court erred in denying its motion for new trial. The argument in support of this contention is based on the insufficiency of the evidence to support the judgment and that the judgment is contrary to the great preponderance of evidence and law.

Where the sufficiency of the evidence is questioned, it is essential that Rule 9(b) of the Supreme Court Rules be complied with by the questioner. Lyons v. Lyons, 279 Ala. 329, 185 So.2d 121.

In the instant case the City, in its brief, failed to narrate the testimony of two witnesses for Lucas. Such narration is required even where the witnesses are not your own. Standard Oil Co. v. Johnson, 276 Ala. 578, 165 So.2d 361. Such omission constitutes a failure to comply with Rule 9(b), supra.

Nevertheless, we would point out that where a trial court hears the evidence ore tenus, without a jury, its judgment is to be accorded the effect of a jury verdict and is not to be set aside unless it be plainly and palpably wrong. Lott v. Keith, 286 Ala. 431, 241 So.2d 104.

After careful consideration of all the evidence, we cannot say that the trial court was plainly wrong in finding for Lucas.

There being no reversible error argued in brief, this case is affirmed.

Affirmed.